359 A.2d 444

**COMMONWEALTH of Pennsylvania**

v.

**James Archie THROCKMORTON, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1976.

Decided June 28, 1976.

64

James B. Yelovich, Kimmel, Rascona, Yelovich & Bowman, Somerset, for appellant.

Frederick F. Coffroth, Dist. Atty., Thomas G. Saylor, Jr., 1st Asst. Dist. Atty., Somerset, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the results of a breathalyzer test should have been suppressed because the test was conducted pursuant to an illegal arrest.

On May 12, 1972, appellant, a resident of Virginia, approached the toll booth at exit 10 of the Pennsylvania Turnpike in Somerset Borough, Somerset County, Pennsylvania. Because appellant was unable to find his turnpike toll ticket, he was directed by the toll collector to pull his vehicle into a closed lane of traffic. A short time later, the appellant asked the toll collector to summon a police officer. At about 12:50 a. m. two Pennsyl-

vania State Troopers arrived. The officers found appellant seated on the passenger side in the front seat with the car's ignition turned off. Initially, the officers were concerned that appellant was ill or hurt. A long conversation ensued regarding appellant's inability to find his toll ticket, although the officers could plainly see the toll ticket on the floor near appellant's feet. They instructed appellant to pick the ticket up. The officers smelled the odor of alcohol and observed that appellant's speech was slurred and that his eyes were bloodshot. Appellant was asked to step out of the car, and the officers observed that appellant's gait was unsteady. Field sobriety tests indicated that appellant was under the influence of alcohol. The officers placed appellant under arrest and drove him to the State Police Barracks. At the Barracks, appellant reluctantly consented to a breathalyzer, which registered a reading of .22. The officers charged appellant with driving under the influence of alcohol.[1]

After committing appellant to jail, the officers returned to the toll station to move appellant's car. Under the front seat, the officers noticed a loaded revolver and an unopened bottle of whiskey. They secured a warrant for a search of the car and found more unopened liquor and beer containers in the trunk.

Appellant was indicted for driving under the influence of alcohol and violation of the Uniform Firearms Act.[2] The appellant was tried on November 29–30, 1972. The jury convicted him of the motor vehicle violation but acquitted him of the firearms charge. On July 9, 1973, the court en banc granted appellant a new trial because it determined that the introduction of the unopened liquor containers into evidence was error. Before retrial, on July 31, 1973, appellant filed his first motion

1. Act of April 29, 1959, P.L. 58, § 1037; 75 P.S. § 1037.

2. Pennsylvania Uniform Firearms Act, Act of 1972, December 6, P.L. 1482, No. 334, § 1; 18 Pa.C.S. § 6106.

to suppress. The court held a hearing on November 27, 1973, and denied appellant's motion. On the same day, a jury convicted appellant of driving under the influence of alcohol. Appellant filed timely post-verdict motions which were denied on April 17, 1974. The court sentenced appellant on September 9, 1974, to pay a fine of $500 and to serve a term of imprisonment of 6 to 60 days. The appeal followed.

At the outset, we must determine whether appellant's claim is properly preserved for review. Appellant did not litigate the issue of the admissibility of the breathalyzer prior to his first trial. His first pre-trial motion to suppress was not filed until after the award of a new trial by the court en banc. We must determine, therefore, whether appellant had the right to a suppression hearing prior to his second trial. If not, we are precluded from considering the issue.

■■ It is well settled that when a suppression motion has been denied, the admissibility of the evidence may not be relitigated at the trial level. Rule 323, Pa. R.Crim.P. See also *Commonwealth v. Bonser*, 215 Pa. Super. 452, 258 A.2d 675 (1969); *Commonwealth v. De-Michel*, 214 Pa.Super. 392, 257 A.2d 608 (1969). Furthermore, it is clear that if a defendant fails to raise suppression issues prior to trial, he may not litigate them for the first time at trial, in post-trial motions, or on appeal. Rule 323 Pa.R.Crim.P., Rule 1123, Pa.R. Crim.P.; *Commonwealth v. Williams*, 230 Pa.Super. 259, 326 A.2d 420 (1974); *Commonwealth v. Valle*, 227 Pa. Super. 191, 323 A.2d 74 (1974); *Commonwealth v. Armor*, 226 Pa.Super. 529, 323 A.2d 211 (1974).

Rule 323, Pa.R.Crim.P., provides that a criminal defendant may make application for suppression of any evidence alleged to have been obtained in violation of his constitutional rights. Rule 323(b), Pa.R.Crim.P., states: "Unless the opportunity did not previously exist, or the

interests of justice otherwise require, such application shall be made only after a case has been returned to court and not later than *ten days before the beginning of the trial session in which the case is listed for trial, except that in any judicial district having continuous trial sessions said application shall be filed not later than ten days before the day the case is listed for trial. If timely application is not made hereunder, the issue of the admissibility of such evidence shall be deemed to be waived.*" (Emphasis supplied). Furthermore, section (j) of the Rule provides: "If the court determines that the evidence is admissible, *such determination shall be final, conclusive and binding at trial,* except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its admissibility." (Emphasis supplied). See *Commonwealth v. Eckhart*, 430 Pa. 311, 242 A.2d 271 (1968), *after remand*, 436 Pa. 361, 260 A.2d 750 (1970).

■■ Rule 323 does not prohibit the litigation of a suppression motion after the grant of a new trial if there has been no prior determination of the issue. Nothing in the Rule limits the defendant to filing suppression motions prior to his *first* trial; the Rule simply requires that suppression motions be filed after the case has been returned to court and ten days prior to the beginning of the trial session in which the case is listed for trial or, in districts having continuous trial sessions, ten days prior to the date of trial. Thus, Rule 323(b), by its terms, could equally refer to both a retrial and an initial trial, provided that the issue has not yet been determined. Rule 323(j); Pa.R.Crim.P.

Because this issue is not conclusively resolved by the Rules of Criminal Procedure,[3] it is necessary to analyze

---

3. Although no case has addressed the issue posed by the instant case, we might analogize to the situation presented by a criminal defendant who appeals from a conviction in Municipal Court to

the policies which underpin the "waiver doctrine". "Appellate Courts render a disservice to judicial economy and the efficient operation of our court system where they freely accept issues that could have and should have been first presented to the courts below for their consideration. Such procedures encourage the reversal of many trials for errors which could have been, in all probability, avoided or cured if they had been promptly called to the attention of the lower court." *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48, 52 (1975) (Citations omitted). In addition to allowing trial courts to correct asserted trial errors, rigorous enforcement of the Rules of Criminal Procedure provisions on waiver ensures the making of a complete record, which is essential to appellate review. *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974). Trial counsel is deterred from relying on an appellate court to bail out his poor performance at trial. *Commonwealth v. Mitchell*, supra.

By allowing a criminal defendant to file an application to suppress evidence prior to retrial, the goal of judicial economy is actually promoted. If we preclude the defendant this opportunity, his alternative remedies are much more cumbersome and time-consuming. If the defendant is convicted, and if he retains new counsel, he may allege on appeal that trial counsel was ineffective

the Court of Common Pleas. This Court has held that a criminal defendant who has unsuccessfully litigated the suppression issue at a trial in Municipal Court has the right to relitigate the issue prior to his trial de novo in the Court of Common Pleas. *Commonwealth v. White*, 228 Pa.Super. 23, 324 A.2d 469 (1974).

Furthermore, the right of a defendant to raise and litigate suppression issues on retrial is suggested by *Commonwealth v. Eckhart*, supra. In *Eckhart* the appellant sought to raise the inadmissibility of his confession under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court held that *Miranda* was inapplicable, but noted that on retrial the *Miranda* rule would apply because the retrial would occur after June 13, 1966, the date of the *Miranda* decision. *Commonwealth v. Eckhart*, supra, 430 Pa. at 316, n. 1, 242 A.2d 271, 273 n. 1.

for failing to file timely suppression motions. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). If the record is insufficient for us to decide the merits of the claim, we would remand the case for a hearing on ineffectiveness under *Commonwealth v. Twiggs*, 460 Pa. 105, 331 A.2d 440 (1975). If the trial court decides against the defendant, he would inevitably take a second appeal to this Court. On the other hand, if either this Court or the trial court decides that the ineffectiveness claim is meritorious, the defendant would be entitled to a *second* new trial. It is hard to conceive of a more wasteful expenditure of judicial time.

Alternatively, if appellant is convicted after retrial but does not retain new counsel on appeal, the ineffectiveness issue would not be raised, and the defendant, if his conviction is affirmed, would be remitted to Post Conviction Hearing Act relief under the Act of January 25, 1966; P.L. 1580 (1965), § 1 et seq.; 19 P.S. 1180–1 et seq. (Supp.1975). If the P.C.H.A. court denies appellant's ineffectiveness claim, our Court, assuming that the pretrial suppression claims are meritorious, would be required to reverse the conviction and grant a new trial. This second alternative is as dismal as the first. Furthermore, both alternatives impose unwarranted delay on the criminal defendant whose constitutional rights may have been violated. It is clear, therefore, that the most expeditious procedure would be to permit counsel to file a suppression motion prior to retrial.

This procedure also promotes the making of a complete record for appellate review. Further, the deterrent effect of the waiver doctrine is not diluted by allowing trial counsel to file suppression motions prior to retrial because few lawyers are likely to rely on the possibility of reversible error at trial in order to file otherwise untimely suppression motions. Thus, no policy in support of waiver is offended by the procedure we approve in this case.

██ Appellant has, therefore, not waived his right to raise his suppression claim by filing his motion for the first time prior to his retrial. The issue has been presented to the court below, and it has already passed on the merits of appellant's claim. The issue is, therefore, properly preserved for our review.[4]

██ It is well settled that driving under the influence of alcohol is a misdemeanor, and that a warrantless arrest for this offense could only be made when the arresting officer had probable cause to believe that the offense had been committed *in his presence*. Act of April 29, 1959, P.L. 58, § 1204, 75 P.S. § 1204.[5] See *Commonwealth v. Kirkutis*, 233 Pa.Super. 492, 334 A.2d 682 (1975); *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974); *Commonwealth v. Quarles*, 229 Pa. Super. 363, 324 A.2d 452 (1974); *Commonwealth v. Jacoby*, 226 Pa.Super. 19, 311 A.2d 666 (1973); *Commonwealth v. Brown*, 225 Pa.Super. 289, 302 A.2d 475 (1973); *Commonwealth v. Reeves*, 223 Pa.Super. 51, 297 A.2d 142 (1972). If the arrest is illegal, a breathalyzer which is the product of that arrest must be suppressed. *Commonwealth v. Kirkutis*, supra; *Commonwealth v. Kloch*, supra.

██ In the instant case, the officers concede that appellant was placed under arrest despite the fact that his car was at rest with the motor turned off. There had been no accident.[6] Appellant was peacefully seated in the passenger seat of the car. Thus, the misdemeanor was not committed within the officer's presence. The

4. Better practice would dictate that all pretrial motions be filed before a criminal defendant's initial trial.

5. This provision was amended by the Act of July 20, 1974, P.L. 522, No. 177, § 2; 75 P.S. § 1204(a) (Supp.1975), to permit the police to arrest any person operating a vehicle under the influence of alcohol when an accident has resulted.

6. See Note 5, supra.

arrest, was, therefore, unlawful, and the breathalyzer results must be suppressed.

Judgment of sentence reversed and a new trial granted.

SPAETH, J., files a concurring opinion.

PRICE and VAN der VOORT, JJ., dissent.

SPAETH, Judge (concurring):

I join Judge Hoffman's opinion but wish to add a comment on an issue that he touches upon but does not discuss.

The Commonwealth has argued at p. 448 *et seq.* of its brief that appellant validly consented to the breathalyzer test. If he did, the results of the test would derive not from the illegal arrest but from his consent, and so would be admissible. *Commonwealth v. Quarles*, 229 Pa.Super. 363, 377–78, 324 A.2d 452, 460 (1974). It is, however, the Commonwealth's burden to prove that the consent was knowing and voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

When asked about the administration of the breathalyzer test, Trooper Peters testified:

. . . and then we got to the barracks and I advised him more fully about the operation of the breathalyzer, and then he wasn't going to take the breathalyzer test if we used it against him. I told him we couldn't make any deals. I said will you submit to a chemical test of your breath. And at this time Mr. Throckmorton began to cry, and then he volunteered again to take the breathalyzer test . . .

(Record 133a–134a)

As Judge Hoffman indicates, at 446 this shows that appellant's consent was "reluctant[ ];" if not contradicting it at least precludes a finding that consent was voluntary.