425 A.2d 782

**Eugene A. TICE and Diane R. Lindsay Bradley, Administratrix of the Estate of Robert Lindsay, Deceased**

**v.**

**NATIONWIDE LIFE INSURANCE CO., Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1980.

Filed Feb. 6, 1981.

Petition for Allowance of Appeal Denied July 9, 1981.

Marvin Comisky, Philadelphia, for appellant.

Michael Goldman, Philadelphia, for appellees.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, BROSKY and WICKERSHAM, JJ.

WICKERSHAM, Judge:

This appeal by Nationwide Life Insurance Co. (hereafter Nationwide) is presently before our court for the second time. Basically, Eugene A. Tice, plaintiff below, filed a complaint in assumpsit on September 16, 1974, seeking the proceeds of a $50,000 life insurance policy issued by appellant on the life of Robert Lindsay. After appellant filed an answer and new matter alleging that Tice had no insurable interest in the life of Robert Lindsay, the insured's widow, Diane Lindsay Bradley, intervened as a party plaintiff on behalf of the insured's estate.

Bradley filed interrogatories to be answered by appellant on June 16, 1976, which were not answered. Utilizing the sanction procedures authorized by Philadelphia Civil Rule 4005*(d)[1] the Prothonotary of Philadelphia entered a final order of judgment by default on December 9, 1976.

Nationwide filed a petition to open judgment entered against it. Judge Goodheart entered an Order dismissing

---

1. Philadelphia Civil Rule 145 [formerly Philadelphia Civil Rule 4005*(d)], provides in pertinent part as follows:

that petition and Nationwide appealed to our court and we affirmed.[2] We held then that the lower court had not erred in holding that appellant failed to reasonably explain or reveal a legitimate excuse for the delay that occasioned the default judgment. It is important to note that appellant also argued on appeal a contention that this default judgment was not entered in strict compliance with Rule 4005*(d), attempting thereby to seek to benefit by our then recent decision in *Strickler v. United Elevator Co. (Inc.)*, 248 Pa.Super. 258, 375 A.2d 86 (1977).[3]

We held, however, that Rule 4005*(d) was in effect at all relevant times, and any contention that this default judg-

"If the adverse party fails to file of record answers to the interrogatories within the time period required by this Rule . . . the Prothonotary shall, on praecipe and certification of service, and upon ten days notice by the party filing the interrogatories, enter an interlocutory order requiring the adverse party to file answers within thirty days of the date of the order, and providing for sanctions as hereinafter set forth.

"This order shall become final at the expiration of the interlocutory period, upon filing of a supplemental praecipe and certification of service, unless prior to the expiration of the interlocutory period, the party required to answer the interrogatories files a motion for an extension of this time limit. Such motion shall be disposed of by an appropriate order of the Civil Motion Court.

"The interlocutory order of the Prothonotary setting forth sanctions as provided herein, shall be as follows:

"(1) As to defendant, defendants, or additional defendants, an order entering judgment as to liability in favor of the party filing the interrogatories against the non-answering party who shall be precluded from the entering of a defense and the introduction of evidence at the time of trial relating to the subject matter of the unanswered interrogatories; . . .

.    .    .    .    .

"Wherever a praecipe is required herein, it shall be filed by the party filing the interrogatories."

2. *Tice v. Nationwide Life Ins. Co.*, 253 Pa.Super. 118, 384 A.2d 1257 (1978), opinion by President Judge Jacobs.

3. *Strickler*, which was decided June 29, 1977 in an opinion by Judge Jacobs, was the first decision of this court construing Rule 4005*(d). We reversed the lower court's order refusing to strike the default judgment since the record there revealed that service of the executed interlocutory order had not been effected and, therefore, the 30 day interlocutory period had not commenced.

ment was not entered in compliance therewith could and should have been presented to the lower court. We refused, therefore, to consider appellant's *Strickler* argument for the first time on appeal.

More than a year later Philadelphia Civil Rule 145 [formerly Philadelphia Civil Rule 4005*(d)] was before a three judge panel of our court in *Gonzales v. Procaccio Bros. Trucking Co.*, 268 Pa.Super. 245, 407 A.2d 1338 (1979).[4] In *Gonzales* the Prothonotary of Philadelphia had entered an interlocutory order pursuant to Philadelphia Civil Rule 145 which directed appellee to answer appellant's interrogatories within 30 days or suffer a judgment of non pros. Thereafter judgment of non pros was entered by the prothonotary and more than a year later appellee moved to strike the judgment of non pros. The lower court, by the Honorable Abraham J. Gafni, entered an order striking the judgment of non pros which order was based upon a finding that the procedure prescribed by Philadelphia Civil Rule 145 was in conflict with Pa.R.C.P. 4019 and therefore invalid.

In *Gonzales,* we said:

"Although the several courts of common pleas may properly adopt local rules, such rules are invalid to the extent that they conflict with or are inconsistent with the Pennsylvania Rules of Civil Procedure. *City of Philadelphia v. Percival*, 464 Pa. 308, 346 A.2d 754 (1975); *Gilmer v. Philadelphia Transportation Company*, 237 Pa.Super. 57, 60, 346 A.2d 346, 348 (1975); Act of June 21, 1937, P.L. 1982, No. 392, § 2, as amended, 17 P.S. § 62.[3]

"In 1977, when appellant's judgment was stricken, Pa.R. C.P. No. 4019(a)(1) provided that the "court may, on motion, make an appropriate order if a party wilfully fails to file answers ... to written interrogatories served under rule 4005." [4] Subsection (c) identified the types of orders [5] which a court may enter when acting under subsection (a).

4. *Allocatur denied*, October 29, 1979.

"Philadelphia Civil Rule No. 145[6] purports to establish a procedure by which the Prothonotary *shall*, on praecipe and certification of notice, "enter an interlocutory order requiring the adverse party to file answers within thirty (30) days . . ." If answers are not filed within such period of thirty days and the moving party follows the prescribed procedure, the interlocutory order will become final and, on praecipe, a final sanction order will be entered. The mandatory sanction, if the defaulting party is a plaintiff, is an order entering a judgment of non pros. The procedure established by the Philadelphia rule does not require intervention by the court and does not permit the Prothonotary to exercise discretion in fashioning the sanction order.

"Pa.R.C.P. No. 4019 is clear. It establishes an unequivocal and mandatory procedure. Where answers to interrogatories have not been filed, a motion must be presented to the court to determine the default. *Hanchey v. Elliott Truck Brokerage Company*, 421 Pa. 131, 135, 218 A.2d 743, 745 (1966). Upon finding that a default has occurred, "the court may . . . make an appropriate order." Subdivision (c) of Pa.R.C.P. No. 4019 amplifies the scheme of the rule by designating specific sanction orders which may be appropriate under particular circumstances. The imposition of specific sanctions, however, is largely within the discretion of the court. *Pompa v. Hojnacki*, 445 Pa. 42, 45, 281 A.2d 886, 888 (1975). See also: 10 Goodrich-Amram 2d § 4019(a):2.1, 3.1; 5A Anderson Pennsylvania Civil Practice § 4019.2. As a general rule, sanctions will not be imposed in the absence of some wilful disregard or disobedience of a court order or an obligation expressly stated in the Rules. In any event, it is the court which has been given responsibility for overseeing discovery conducted by the parties and which may enter appropriate sanctions to insure the adequate and prompt discovery of matters allowed by the Rules of Civil Procedure.

"This responsibility cannot be delegated to a ministerial officer such as a Prothonotary. Although he acts as clerk

for the court of common pleas, the Prothonotary possesses no judicial powers. *Irwill Knitwear Corp. v. Wexler*, 229 Pa.Super. 48, 323 A.2d 23 (1974); *Smith v. Safeguard Mutual Insurance Company*, 212 Pa.Super. 83, 86, 239 A.2d 824, 826 (1968); *Warner v. Cortese*, 5 Cmwlth. 51, 288 A.2d 550 (1972).

\*　　\*　　\*　　\*　　\*　　\*

"In the instant case, we hold that Philadelphia Civil Rule 145 is in conflict with Pa.R.C.P. No. 4019 and invalid. Therefore, the Prothonotary lacked the power to enter a judgment of non pros against appellee, and a judgment so entered was null and void. The trial court properly ordered the same stricken.

"Order affirmed." (Footnotes Omitted)

Id., 268 Pa.Super. at 249–253, 407 A.2d at 1340–1342.

Following our affirmance in *Tice v. Nationwide Life Ins. Co.*, 253 Pa.Super. 118, 384 A.2d 1257, *supra*, the appellant, Nationwide, then filed a motion to *strike* the default judgment. The lower court denied the motion and a three judge panel of our court heard the appeal.

Subsequently, we granted a petition for reargument en banc in order to consider the impact of *Gonzales, supra,* on this and other recent decisions.[5]

5. Among these recent decisions are

*Graham v. Kutler*, 275 Pa.Super. 188, 418 A.2d 676 (1980), where a panel of our court reversed the order of the lower court and struck a judgment entered by default for failure to file answers to interrogatories pursuant to Philadelphia Rule 4005\*(d). The panel opinion made reference to the *Gonzales* decision, *supra*. The controlling decision in reversal, however, was the *Strickler* case, *supra*. Also *Pavone v. Anthony and City of Philadelphia*, 273 Pa.Super. 376, 417 A.2d 697 (1980), where a panel of our court reversed the order of the lower court and struck the judgment which had been entered by the Philadelphia Prothonotary pursuant to Philadelphia County Local Rule 4005\*(d), again citing and relying on *Gonzales* and stating that, "The judgment entered here must also be stricken since it likewise was taken under the now invalid rule."

Finally, in *Washington v. Liberi*, 273 Pa.Super. 48, 416 A.2d 1082 (1979), filed December 21, 1979, a panel of our court affirmed the order of the Court of Common Pleas of Philadelphia County denying appellant's petition for reconsideration of an earlier order denying his motion to strike a non pros. A judgment of non pros had been

■ We agree with our panel conclusion in *Gonzales, supra*, that Philadelphia Civil Rule 145 [formerly Philadelphia Civil Rule 4005*(d)] is in conflict with Pa.R.C.P. 4019 and therefore invalid. We hold that the prothonotary lacked the power to enter judgment and that the judgment so entered was subject to avoidance. Such a judgment must be stricken, if as here, an appeal was pending when *Gonzales* was handed down.[6] We further hold that appellant has not waived its right to such application in the instant case

entered against appellant for his failure to answer interrogatories and judgment was entered pursuant to procedures established by Philadelphia Civil Rule 145. The lower court had entered an order dated June 6, 1977, denying plaintiff's petition to strike the judgment of non pros and thirteen (13) months later plaintiff-appellant filed his petition for reconsideration of the order of June 6, 1977, which had denied his motion to strike. On appeal plaintiff-appellant argued that the Philadelphia Civil Rule 145 was void for being inconsistent with Pa.R.C.P. 4019. It was the only issue raised on appeal before the Superior Court panel which cited *Gonzales* in its panel decision but refused to apply *Gonzales* retroactively. The panel decision held that *Gonzales* did not compel reconsideration of the order entered in June 1977.

In a lower court opinion of *Gibson v. City of Philadelphia*, 3 P.C.R. 426, filed October 22, 1979, President Judge Bradley, a judgement by default had been entered by the prothonotary against defendant, City of Philadelphia, pursuant to Philadelphia Court Rule 145 for failure to answer interrogatories. Citing *Gonzales* the court held that Philadelphia Civil Rule 145 was in conflict with Pa.R.C.P. 4019 and invalid. The court held, therefore, that the prothonotary lacked the power to enter a judgment of non pros against appellee and held that a judgment so entered was null and void. The court concluded that the judgment was void and must be stricken without regard to the passage of time. The court did remind the parties that the striking of the judgment against the defendant would not preclude the plaintiff from filing a proper motion for sanctions pursuant to Pa.R.C.P. 4019.

6. A judgment, to be valid and enforceable, must be supported by three elements. They are: (1) the court must have jurisdiction of the parties; (2) the court must have jurisdiction of the subject matter; and, (3) the court or tribunal must have the power of authority to render the particular judgment. *Roberts v. Gibson*, 214 Pa.Super. 220, 251 A.2d 799 (1969); if the requirements for validity are not met, a judgment may be subject to avoidance. Restatement (Second) of Judgments (Tent. Draft No. 5, March 10, 1978). *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

because of a failure to argue the invalidity of Philadelphia Civil Rule 145 in the lower court.[7]

Accordingly, we reverse the order of the lower court and strike the judgment entered on behalf of appellee.

SPAETH, J., files a concurring opinion, in which CERCONE, President Judge, and PRICE, J., join.

CAVANAUGH, J., files a dissenting opinion.

SPAETH, Judge, concurring:

I agree that the default judgment taken against appellant should be stricken. I write separately to explain why I agree and to state what I believe should be the effect of our decision in this case on the many other judgments taken over the years under Philadelphia Civil Rule 145. At one time our consideration might have begun and ended with the statement that judgments obtained under an invalid rule were void and of no effect for any purpose. However, I believe that a consideration of how the law has evolved should lead to a much narrower holding.

–1–

What does it mean to say that a judgment is "void"? Many older cases say that it means that the judgment is of no effect, at any time, for any purpose. Sometimes this is said quite colorfully, as, for example, that a void judgment "is a mere blur on the record . . . which it is the duty of a court of its own motion to strike off, whenever its attention is called to it." *Romberger v. Romberger*, 290 Pa. 454, 457, 139 A. 159, 160 (1927). *See also, Haverford Township School District v. Herzog*, 314 Pa. 161, 171 A. 455 (1934); *Bryn Mawr National Bank v. James*, 152 Pa. 364, 25 A. 823 (1893);

7. *Kuchinic v. McCrory*, 422 Pa. 620, 222 A.2d 897 (1966). The issue here is one of law. We have already decided *Gonzales*. No benefit to us would occur if the issue had been argued below and an opinion written by the lower court. There being no purpose, in this case, to applying a waiver finding, we decline to do so. ". . . it is unjust to require an appellant whose case is not yet final to endure the burden of a rule now recognized as offensive to our jurisprudence [footnotes omitted]." *Commonwealth v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977).

*Sterling Electric & Furniture Co. v. Irey,* 189 Pa.Super. 450, 150 A.2d 363 (1959); *Samango v. Hobbs,* 167 Pa.Super. 399, 75 A.2d 17 (1950); *Peoples National Bank v. D. & M. Coal Company,* 124 Pa.Super. 21, 187 A. 452 (1936). Such statements, however, must be regarded with some reserve, for in every one of the cases just cited, including *Romberger,* a petition to strike the judgment had been filed. Thus the suggestion that an appellate court has the duty to strike a void judgment *sua sponte* has been *dictum.*

In a related field of the law, courts have been concerned with the effect to be given action taken under a statute later held to be unconstitutional. In keeping with traditional notions of "voidness," the United States Supreme Court in *Norton v. Shelby County,* 118 U.S. 425, 442, 6 S.Ct. 1121, 1125, 30 L.Ed. 178 (1886), held that an unconstitutional law "confers no rights; it imposes no duties; it affords no protection; it is in legal contemplation as inoperative as though it had never been passed." This view, however, has since been severely limited. In 1940 Chief Justice HUGHES wrote for a unanimous court, referring to *Norton,* that the prior existence of a law "is an operative fact and may have consequences which cannot justly be ignored." *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 S.Ct. 329 (1940). *See also, Kuhn v. Fairmont Coal Co.,* 215 U.S. 349, 30 S.Ct. 140, 54 L.Ed. 228 (1910). Recently, the drafters of the Restatement (Second) of Judgments, in the Introductory Note to Chapter 2, "Validity of Judgments," Restatement (Second) of Judgments (Tent. Draft No. 5, March 10, 1978), have adopted the point of view expressed by Chief Justice HUGHES in *Chicot.* After characterizing the first Restatement, in terms that echo *Norton,* as having adopted the view that if the requirements for validity are not met, a judgment is a nullity for all purposes, the drafters of the Restatement (Second) express the opinion that if the requirements for validity are not met, a judgment may be subject to avoidance, not, however, as an automatic consequence, but depending on the nature of the defect, the opportunity of the complaining party to chal-

lenge the defect, and on whether there has been reliance on the judgment. *Id.* at 4–5.

These developments in the law should encourage us to take the view of the Restatement (Second); we should decide whether the judgment should be stricken only after examining every aspect of the particular context in which the attack on the judgment is made.

–2–

Instead of asking, "What effect does a 'void' judgment have?," we should ask, "Do we want our decision in *Gonzales v. Procaccio Bros. Trucking Co.*, 268 Pa.Super. 245, 407 A.2d 1338 (1979), to be applied retroactively?" By stating the problem before us as a problem of retroactivity, we may escape the tyranny of the label "void."

To be sure, a court was not always free thus to restate the problem. At common law, there could be no problem of retroactivity. The notion was that courts did not make the law, they found it. When a court overruled a decision, the new, overruling, decision was not new law but the true law, now discovered; the old, overruled, decision represented an unsuccessful attempt to discover the true law, from which it followed that the old decision had never been the law. It is this sort of thinking that underlies such cases as *Norton v. Shelby County, supra.* It is now established, however, that a court may hold that a legal principle is valid so far as the past is concerned, even though from now on it will not be valid. Thus a court may even decline to apply a decision to the case before it, making the decision prospective only. *Great Northern R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932) (CARDOZO, J.) (to avoid injustice and hardship, courts may say that decisions though later overruled "are law none the less for intermediate transactions," *id.* at 364, 53 S.Ct. at 148).

Ordinarily an appellate court will apply a decision announcing a change in the law to the case before the court. The new principle will then control other cases pending in the trial courts or adjudicated by the trial courts but pending on direct appeal. *Linkletter v. Walker*, 381 U.S. 618, 85

S.Ct. 1731, 14 L.Ed.2d 601 (1965) (collecting cases and reviewing the development of the law). When a new principle is thus applied to a pending case, it may be said that there is no problem of "true retroactivity." *Commonwealth v. Williams*, 232 Pa.Super. 339, 331 A.2d 875 (1974). A problem of true retroactivity arises only when a change in the law occurs after a case has been finally litigated—*i. e.*, tried and not appealed, or appealed and appeal decided—and the attempt is then made to apply that change in a collateral proceeding, such as on a petition for habeas corpus. *Id.* When confronted with a problem of true retroactivity, a court must carefully balance all of the interests involved, before deciding whether the change in law should or should not be applied. The court will "look[ ] to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter v. Walker, supra* 381 U.S. at 629, 85 S.Ct. at 1737. This is so whether the case is civil or criminal. *Id.* at 628, 85 S.Ct. at 1737.

This case is before us on direct appeal from the lower court's order denying appellant's motion to strike the default judgment. That is not the same as a direct appeal from the judgment itself. But neither is it collateral in the same sense that a habeas corpus petition is collateral. A motion to strike a judgment is difficult to characterize, because although "its immediate or direct object is to nullify the judgment . . . it is made in an action separate from, and thus collateral to, the action in which the judgment was rendered." Introductory Note to Chapter 5, "Relief From a Judgment," Restatement (Second) of Judgments (Tent. Draft No. 6, February 10, 1979) at 5.

If we regard the appeal here as a direct appeal from a judgment, we are not faced with a case of true retroactivity, and no reason appears why we should not apply the change of law announced in *Gonzales*. If we regard the appeal as from an order entered in a proceeding collateral to the judgment, we are faced with a case of true retroactivity, and it becomes necessary to balance the interests involved.

Doing so, I conclude that we should still apply *Gonzales.* Any reliance on the judgment has been limited; the judgment has not been satisfied; and appellee has been on notice that it was being objected to. Furthermore, if the judgment is stricken, appellee will not be out of court but will only have lost the benefit of an automatic sanction imposed on appellant for its failure to answer interrogatories. This failure, moreover, was not appellant's own, but occurred because of the neglect of appellant's counsel. *See Tice v. Nationwide Life Ins. Co.,* 253 Pa.Super. 118, 123, 384 A.2d 1257, 1259 (1978). So far as appellant itself is concerned, it has pleaded a meritorious defense. *Id.,* 253 Pa.Super. at 122, 384 A.2d at 1259. If, therefore, we were to refuse to apply *Gonzales* retroactively, and consequently hold that the judgment should not be stricken, we might do an injustice in the sense of enabling appellee to hold on to a victory that on the merits, or substantively, as distinguished from procedurally, was undeserved.

I do not mean to suggest that this case should turn on its peculiar facts, which we know only because the attack on the judgment here was started by a petition to open. *Tice v. Nationwide Life Ins. Co., supra.* Those facts do lend weight to the conclusion that *Gonzales* should be applied, but I believe we may go further and say that *Gonzales* should be applied in any case pending on appeal when it was handed down. If such a case involves a problem of true retroactivity at all, still, I submit, justice is more likely to be achieved if *Gonzales* is applied, the judgment stricken, and the action permitted to proceed to a decision on the merits, than if *Gonzales* is not applied and the judgment permitted to stand.

–3–

The foregoing does not dispose of the case, for we must still consider the possible impact of the doctrine of waiver, which has developed concurrently with the doctrine of retroactivity. It may be that the two doctrines conflict. In other words, should we say that even though as a general rule *Gonzales* should be applied in any case pending on appeal

when it was handed down, here appellant has waived its right to such application?

We know that the right to seek a determination that Rule 145 was invalid may be waived. In *Doner v. Jowitt and Rodgers Co.* 484 Pa. 496, 399 A.2d 402 (1979), the plaintiff-appellant wanted to make the very argument made to us in *Gonzales*—that Philadelphia Rule 145 was invalid because in conflict with Pa.R.C.P. 4019. The Supreme Court held, however, that it would not hear the argument because it had not been made before the lower court, our court, or in the petition for allowance of appeal. Four months later we handed down *Gonzales.*

Here, appellant, as has been mentioned, first attacked the judgment by petition to open. When we affirmed the lower court's order denying that petition, *Tice v. Nationwide Life Ins. Co., supra,* appellant filed a motion to strike the judgment. In that motion it argued that the rule of *Strickler v. United Elevator Co. (Inc.),* 248 Pa.Super. 258, 375 A.2d 86 (1977), should be applied; it did *not* argue that Philadelphia Rule 145 was invalid because in conflict with Pa.R.C.P. 4019; no doubt it did not because we had not yet handed down *Gonzales* and therefore the argument had not occurred to appellant. After the lower court denied the motion to strike, on the ground that because of the prior petition to open, *Strickler* could not be raised, and after appellant had appealed the denial, we handed down *Gonzales.* Only then, pending our decision on appeal, did appellant argue *Gonzales.* Query, was that too late? Should we hold that because appellant *could* have argued to the lower court—*i. e.,* even though we had not handed down *Gonzales,* still, appellant could have thought of the argument—that Philadelphia Rule 145 was invalid, but did not, it may not so argue to us now?

As a general rule, when there has been a change in the law while a case is on appeal, prior failure to argue that there should have been that change has not been deemed a waiver. In *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966), the appellants were given the benefit on appeal of

*Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964), which changed Pennsylvania's choice-of-law rules for tort cases. In *Kuchinic* the appellants were the administrators and survivors of Pennsylvania residents killed in the crash of a private airplane in Georgia while returning from a football game in Florida. The case had been tried below under the existing Pennsylvania law, which looked to the law of the place of the accident. The appellants had not challenged this choice of law principle, and indeed had tried unsuccessfully to demonstrate the existence of gross negligence, as required under Georgia law. In *Griffith* our Supreme Court rejected the existing rule that the law of the place of the accident controlled, and adopted instead the significant contacts test. In giving the appellants the benefit of *Griffith* on appeal the Court specifically rejected the argument that they had waived the issue by not objecting to the application of Georgia law in the lower court. Writing for the Court, Justice ROBERTS noted that "the rule espoused by appellee would compel counsel to urge upon the trial court every conceivable theory, on the mere chance that, before his case is finally concluded, one such theory might become the law." 422 Pa. at 626, 222 A.2d at 900. Similarly, in *Commonwealth v. Cheeks*, 429 Pa. 89, 95, 239 A.2d 793, 796 (1968), the Court held that "[i]t would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing there existed a right to be waived."

However, since *Kuchinic* and *Cheeks* the Court has abandoned the rule that waiver will not be found in cases of "fundamental error." *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974) (criminal cases); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974) (civil cases). Even errors of constitutional dimension may be waived. *Commonwealth v. Romberger*, 474 Pa. 190, 378 A.2d 283 (1977). These decisions require one to ask whether *Kuchinic* and *Cheeks* are still the law, or whether the doctrine of waiver should not be applied to bar an argument

based on a change in the law that occurred while a direct appeal was pending, if that argument was not made to the lower court.

At least two members of the Court have indicated that they would find waiver in such a case, unless the change in the law established a right constitutionally required. *Commonwealth v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977) (opinion in support of affirmance by POMEROY, J., joined by EAGEN, C. J.). *See also Commonwealth v. Lynch*, 477 Pa. 390, 383 A.2d 1263 (1978) (concurring opinion by POMEROY, J., joined by EAGEN, C. J.). However, in *Ernst* three justices joined an opinion sharply critical of any distinction between constitutional and non-constitutional decisions. After discussing cases in which a change in the law was applied on direct appeal, without regard either to the nature of the change or to waiver, Justice ROBERTS wrote, "[T]hese decisions rest upon the principle that it is unjust to require an appellant whose case is not yet final to endure the burden of a rule now recognized as offensive to our jurisprudence [footnote omitted]." 476 Pa. at 112, 381 A.2d at 1250 (opinion in support of reversal by ROBERTS, J., joined by O'BRIEN and MANDERINO, JJ).

The right before us—the right not to have a default judgment entered against one by the Prothonotary as an automatic sanction for failure to make discovery—is not based on either the United States or Pennsylvania Constitution, but rather on the principle that a local rule may not conflict with a Pennsylvania rule of civil procedure. *Gonzales v. Procaccio Bros. Trucking Co., supra.* Because we lack clear guidance from the Supreme Court on whether the benefit of a non-constitutional change in the law is waived and therefore may not be argued on direct appeal if the issue was not raised in the lower court, we must engage in our own analysis of the right before us.

In my opinion, we should hold that appellant has not waived the right to argue *Gonzales*. The doctrine of waiver is supposed to make the courts work more efficiently. If a litigant is required to make all his arguments first to the

lower court—at the peril of not being able to make them to the appellate court—the lower court will be given the opportunity to correct its errors, and an appeal may be avoided. Even if an appeal is not avoided, the appellate court will have the benefit of a full record, which will include whatever evidence was submitted bearing on the argument, and also the lower court's response to the argument. *See Commonwealth v. Throckmorton*, 241 Pa.Super. 62, 68–69, 359 A.2d 444, 447 (1976). Here, as an appellate court we have lost nothing because appellant did not first argue to the lower court that Rule 145 was invalid. This is not a case where it may be said that if an argument had been made first to the lower court, evidence might have been offered and received by the lower court bearing on the argument. Here, once the default judgment had been entered under Rule 145, it was too late for the lower court to receive any evidence. The record before us is just as full as it would have been if appellant had argued the invalidity of Rule 145 to the lower court. It is true that because appellant did not so argue, we do not have the benefit of a lower court opinion in response to the argument, but here that fact in no way inconveniences us. The issue is purely one of law, and the controlling decision, *Gonzales*, is one that we have already handed down. Since, therefore, none of the objectives sought to be achieved by the doctrine of waiver would be achieved if the doctrine were applied, we should not apply it.

–4–

If we examine the cases regarding "void" judgments in light of the doctrines of retroactivity and waiver, we may conclude, I suggest, that the effect to be given *Gonzales* will vary, as follows:

First, suppose the judgment sought to be stricken has been satisfied. Rule 145 permitted two sorts of judgment: a judgment of non pros against a plaintiff, and a judgment of liability against a defendant. A judgment against a plaintiff may be regarded as "satisfied" if the applicable statute of limitations has run since the judgment was entered; a judgment against a defendant may be regarded as

"satisfied" if damages have been assessed and paid. Once a judgment has been satisfied, it no longer exists, and hence is not subject to attack. *Sanctis v. Checco*, 195 Pa.Super. 193, 171 A.2d 542 (1961), *following Lance v. Mann*, 360 Pa. 26, 60 A.2d 35 (1948), and *Federal Insurance Co. v. Robinson*, 82 Pa. 357 (1876). Thus, a satisfied judgment should not be stricken on the basis of *Gonzales.*

Second, suppose a motion to strike a judgment entered under Rule 145, denial of the motion, and either no appeal or an unsuccessful appeal, all before *Gonzales.* In the interests of finality, the judgment should not be stricken on the basis of *Gonzales.* In *Washington v. Liberi*, 273 Pa.Super. 48, 416 A.2d 1082 (1979) (filed December 21, 1979), we refused to apply *Gonzales* retroactively in a case where a motion to strike, not raising the invalidity of Rule 145, had been made in 1977 and denial of the motion was not appealed. (The appellant had unsuccessfully petitioned the lower court for reconsideration of its denial, again without raising the invalidity issue.) I am not persuaded to a contrary result by broad language in older cases about an appellate court *sua sponte* striking a "void" judgment.

Third, suppose a motion to strike a judgment entered under Rule 145, on grounds other than the invalidity of the rule, denial of the motion, and an appeal pending when *Gonzales* was handed down. The present case is such a case. The judgment should be stricken on the basis of *Gonzales.*

Fourth, suppose a motion to strike a judgment entered under Rule 145, on grounds including the invalidity of the rule, denial of the motion, and an appeal pending before this court. Such a case presents no problem, either of retroactivity or waiver, and the judgment should be stricken on the basis of *Gonzales.*

Fifth, suppose a motion to strike a judgment entered under Rule 145, filed since *Gonzales* was handed down, and still before the lower court. In such a case, the doctrine of waiver should apply. The judgment should be stricken on the basis of *Gonzales*, if *Gonzales* is argued to the lower court. If *Gonzales* is not argued to the lower court, it may

not on appeal be argued to us. Again, I am not persuaded to a contrary result by broad language in older cases.

Sixth, and finally, suppose a motion to strike a judgment entered under Rule 145 has never been filed, and the judgment is still unsatisfied. This court has so far not retreated from the bright-line rule that laches do not run against a "void" judgment. *See, e. g., Strickler v. United Elevator Co., Inc.,* 257 Pa.Super. 542, 391 A.2d 614 (1978). It nevertheless appears to me that the approach of the Restatement (Second) of Judgments implies some qualification of this broad rule. The length of time a "void" judgment has been on the books may affect both the opportunity to object to it and and the likelihood of reliance on it—two of the factors the Restatement suggests be considered in determining enforceability. In a case falling into this final category, I should use the approach of the Restatement to determine whether it would be in the interests of justice to grant a motion to strike on the basis of *Gonzales.*

For the foregoing reasons I concur in the order reversing the decision of the lower court.

CAVANAUGH, Judge, dissenting:

Because in my view the majority and concurring opinions do serious harm to our strong policy of waiver, I dissent.

The concept of waiver—that issues must be raised in the lower court to be considered on appeal—is basic to Pennsylvania appellate review. Pennsylvania Rule of Appellate Procedure 302 declares: "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. Moreover, in 1974 our Supreme Court held that even fundamental error may be waived in both criminal and civil cases. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

Situations in criminal cases in which an issue is waived include the following: if the issue is not raised in a timely filed omnibus pretrial motion, Pa.R.Crim.P. 306; if there is no timely motion for a mistrial, *Commonwealth v. Randolf,*

280 Pa.Super. 189, 421 A.2d 469 (1980); if there is no specific objection to the jury instruction, Pa.R.Crim.P. 1119; *Commonwealth v. Corkan*, 467 Pa. 33, 354 A.2d 537 (1976); if there is no objection to the admission of evidence at trial, *Commonwealth v. Griffin*, 271 Pa.Super. 228, 412 A.2d 897 (1979) *allocatur denied* (1980); if the defendant is not tried within the time provided in Pa.R.Crim.P. 1100 and there is no timely motion for discharge, *Commonwealth v. Byrd*, 250 Pa.Super. 250, 378 A.2d 921 (1977); if the issue is not presented in written, specific postverdict motions, Pa.R. Crim.P. 1123; *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979); if there is no timely motion to withdraw a guilty plea, Pa.R.Crim.P. 321; *Commonwealth v. Baylor*, 279 Pa.Super. 304, 420 A.2d 1346 (1980); if the issue is not contained in a timely filed motion to modify sentence, Pa.R. Crim.P. 1410; *Commonwealth v. Gottshalk*, 276 Pa.Super. 102, 419 A.2d 115 (1980); if the petitioner in a Post Conviction Hearing Act proceeding had a previous opportunity to raise the issue and cannot prove extraordinary circumstances, 19 P.S. § 1180–4; if the issue is not briefed or argued during the postverdict proceedings even though it is contained in postverdict motions, *Commonwealth v. Holtzer*, 480 Pa. 93, 94, 389 A.2d 101, 104 (1978); *Commonwealth v. Perry*, 279 Pa.Super. 32, 420 A.2d 729 (1980); if the issue is not included in a statement of matters complained of on appeal, Pa.R.A.P. 1925; if on appeal the issue is not set out or suggested by the statement of questions involved and not adequately developed in the argument, Pa.R.A.P. 2116; *Commonwealth v. Pounds*, 490 Pa. 621, 630 n.11, 417 A.2d 597, 601 n.11 (1980); if on appeal the jurisdiction of the appellate court is not raised, 42 Pa.C.S.A. § 704; Pa.R.A.P. 741.

Situations in civil cases in which an issue is waived include the following: failure to specifically object to the jury instruction, Pa.R.A.P. 302; *Dilliplaine v. Lehigh Valley Trust Co., supra*; failure to object to the admission of evidence at trial, *Rubenstein v. J. E. Kunkel Co.*, 244 Pa.Super. 474, 368 A.2d 819 (1976); failure to include the issue in

exceptions, Pa.R.C.P. 1038, 1518; failure to include the issue in postverdict motions, *Benson v. Penn Central Transportation Co.*, 463 Pa. 37, 342 A.2d 393 (1975); failure on appeal to raise the issue of the appellate court's jurisdiction, 42 Pa.C. S.A. § 704; Pa.R.A.P. 741.

Even constitutional errors may be waived. *Commonwealth v. Romberger*, 474 Pa. 190, 378 A.2d 283 (1977).

Constitutional errors may be waived, for example, by not raising a specific objection on such ground at trial, *Commonwealth v. Danko*, 281 Pa.Super. 97, 421 A.2d 1165 (1980); by not raising the issue of sentencing in the lower court, *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845 (1975); by not notifying the Attorney General, Pa.R.C.P. 235; *Matter of Adoption of Christopher P.*, 480 Pa. 79, 389 A.2d 94 (1978); *but see Commonwealth ex rel. Stein v. Stein*, 487 Pa. 1, 406 A.2d 1381 (1979); by not notifying the Attorney General on appeal, Pa.R.A.P. 521; *Commonwealth v. Ashford*, 268 Pa.Super. 225, 231 n.3, 407 A.2d 1328, 1330 n.3 (1979).

Thus waiver is a policy firmly established in our jurisprudence. There are, however, situations in which failure to raise an issue in the lower court will not result in waiver on appeal. In *Kuchinic v. McCrory*, 422 Pa. 620, 222 A. 897 (1966), appellants asked that the rule of *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964), be applied to them. *Griffith* had changed Pennsylvania's choice of law rules. The trial in *Kuchinic* had been conducted under the existing choice of law rules and no objection had been raised by the appellants at trial. While *Kuchinic* was on appeal, *Griffith* was decided. The Supreme Court applied *Griffith* to *Kuchinic* even though the appellee argued that the issue had been waived. The court reasoned that the policy behind waiver—the opportunity of the lower court to correct its errors—would not be thwarted by holding that there was no waiver in *Kuchinic*. This is because in *Kuchinic* the case was tried according to the law in existence at that time and, if an objection had been made at trial, the lower court would have had to overrule it and thus would have been unable to

correct its "error." *Kuchinic, supra,* 422 Pa. at 626, 222 A.2d at 901. Thus in *Kuchinic* there was no waiver because an objection in the lower court would have been unavailing.

The instant case, however, differs materially from *Kuchinic.* Here, unlike *Kuchinic,* there was no appellate court decision that governed the issue which could have been raised below. Without such appellate court decision, the lower court, if given the opportunity, could have decided the issue in favor of appellant. Indeed, that is precisely what happened in *Gonzales v. Procaccio Brothers Trucking Company,* 268 Pa.Super. 245, 407 A.2d 1338 (1979). In *Gonzales* the lower court held Philadelphia Civil Rule 145 invalid and on appeal we affirmed. Therefore, if the appellant in the instant case would have made the same argument to the lower court, the lower court could have corrected its error. Since the reason for not finding waiver in *Kuchinic* is absent here, *Kuchinic* does not govern the instant case and waiver may be applied.

The instant case also materially differs from *Commonwealth v. Cheeks,* 429 Pa. 89, 239 A.2d 793 (1968).

In *Cheeks* the appellant raised the issue that his Sixth Amendment right to confrontation had been violated. He had not raised the issue at trial but rather did so through the Post Conviction Hearing Act proceeding. The Supreme Court held there was no waiver for failure to raise the issue at trial since "[i]t would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived." *Id.,* 429 Pa. at 95, 239 A.2d at 796. At the time of Cheek's trial the Sixth Amendment right to confrontation had not been made applicable to the states. *Id.; Pointer v. Texas,* 380 U.S 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Since *Pointer* announced a new principle, there was no waiver by failing to raise the issue at trial. The instant

case does not involve the announcement of a new principle.[1] There is no change in the law here. In *Gonzales, supra,* we merely decided that Philadelphia Civil Rule 145 was in conflict with Pa.R.C.P. 4019 and therefore invalid. *Gonzales, supra,* 268 Pa.Super. at 253, 407 A.2d 1342. *Gonzales* was based on the well-established principle that local rules cannot be inconsistent with or in conflict with rules promulgated by the Supreme Court of Pennsylvania. This principle derives from a statute which existed at least as early as 1937. Act of June 21, 1937, P.L. 1982, § 2 *as amended,* 17 P.S. § 62 (repealed effective June 27, 1978). The last case before *Gonzales* which reaffirmed this principle was decided in 1975. *Gilmer v. Philadelphia Transportation Company,* 237 Pa.Super. 57, 346 A.2d 346 (1975). *Gilmer* predates the entry of the default judgment in the instant case. Since *Gonzales* did not announce a new principle, but instead applied a long-established principle to a particular local rule, the instant case is unlike *Cheeks* in which a new principle was involved. Therefore, *Cheeks* does not support the view that there is no waiver.

When this case was previously before us in *Tice v. Nationwide Life Insurance Company,* 253 Pa.Super. 118, 384 A.2d 1257 (1978) *allocatur denied (Tice I),* appellant asked us to give it the benefit of a decision which was filed while the appeal was pending. Appellant argued that the decision, which construed the same local rule involved here, represented a change in law and therefore failure to raise the issue below did not result in waiver. We held that although there was no prior appellate decision construing the local rule, the local rule was in effect at all times and therefore waiver applied. *Id.* 253 Pa.Super. at 126, 384 A.2d at 1261. Likewise, here 17 P.S. § 62 has been in effect at all times and therefore waiver should apply.

The teaching of *Kuchinic* and *Cheeks* is that there is no waiver when, pending appeal, an appellate decision overrules

1. I note that the motion to strike was filed over ten months after a Philadelphia Common Pleas Court decision had held Philadelphia Civil Rule 145 invalid.

a prior appellate decision or an appellate decision announces a new principle. They represent limited exceptions to our policy of waiver. Indeed in *Commonwealth v. Ernst*, 476 Pa. 102, 381 A.2d 1245 (1977), Justice Roberts, quoting from *Commonwealth v. Simon*, 446 Pa. 215, 285 A.2d 861 (1971) said:

> failure to raise an issue in a prior proceeding is not a waiver when the *legal principles* upon which the issue is premised are *newly announced* in an appellate decision rendered subsequent to the date of the prior proceeding.

*Commonwealth v. Ernst, supra* 476 Pa. at 117, 381 A.2d at 1252. (Opinion in support of reversal). Since *Gonzales* did not overrule a prior decision or establish a new principle, our ordinary rules of waiver should apply.

The majority and concurring opinions, however, do not apply our waiver policy, but instead unnecessarily and unwisely depart from it.

In the majority's view since the only issue is one of law and since that issue has been decided, there is no waiver. Majority Opinion, *ante* at 786, n.8. According to the concurring opinion, since there is no need for a fuller record and the issue has already been decided, there is no waiver. Concurring Opinion, *ante* at 790–791. Although these views consider some of the policies underlying waiver, they fail to adequately consider other policy of waiver, i. e., providing the lower court with an opportunity to correct its errors so that an appeal may be obviated and so that the litigants' and court's (therefore the public's) time and expense may be saved. If we only needed a full record and the issue to have already been decided, we would not have applied waiver, for example, when appellant was before us in *Tice I*. There the record was full and we had already decided the issue in *Strickler v. United Elevator Company*, 248 Pa.Super. 258, 375 A.2d 86 (1977); nevertheless we held that waiver applied.

Applying waiver in the instant case will not be unjust. Appellant delayed answering the interrogatories for nearly six months. *Tice I, supra*, 253 Pa.Super. at 122, 384 A.2d at

1259.  We affirmed the lower court's holding that appellant did not reasonably explain that delay.  Any delay in answering interrogatories may not only delay the ultimate disposition of the case, but may also tax our limited judicial resources in enforcing compliance with the rules of discovery.  Appellant has had numerous opportunities to raise the issue it seeks to raise here.  It failed to do so in its petition to open, in its first appeal to this court, in its petition for allowance of appeal, and in its motion to strike.  It raises the issue here for the first time, twenty-eight months after the judgment was entered.  Since appellant has not reasonably explained the delay in its answering the interrogatories and since it has had numerous opportunities to raise the issue involved here, I conclude that the application of waiver would not be unjust.

Finally, I point out that nothing the court says today precludes the lower court on remand from properly imposing sanctions pursuant to Pa.R.C.P. 4019.  *See* Majority Opinion, *ante*, n.6.

I dissent;  I would affirm the order below.[2]

---

**2.**  The other issues which appellant raises are either waived for failure to raise them below or without merit.