460 A.2d 233

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**William H. BERKHEIMER, Appellant.**

Supreme Court of Pennsylvania.

May 19, 1983.

86

Vincent A. Couchara, Norristown, for appellant.

Joseph A. Smyth, Jr., Dist. Atty., Ronald T. Williamson, Chief, Appeals Div., David M. McGlaughlin, Asst. Dist. Attys., Joseph Hylan, Norristown, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In the early morning hours of September 15, 1978 Glenn Scott was shot and killed in the parking lot of the Holiday Inn in Pottstown, Pennsylvania. William Berkheimer, the appellant, was arrested and charged with Scott's homicide, (murder, voluntary manslaughter and involuntary manslaughter), aggravated assault, recklessly endangering another person, possession of an instrument of crime with intent, and violation of the Uniform Firearms Act. On May 15, 1979 a jury in the Court of Common Pleas of Montgomery County found appellant guilty of voluntary manslaughter, recklessly endangering another person, possession of an instrument of crime with intent, and violation of the Uniform Firearms Act. Post trial motions were filed and denied and on June 23, 1980 appellant was sentenced to five to fifteen years imprisonment. A petition for reconsideration of sentence was filed and denied. This appeal followed.

Appellant asserts that the trial court erred in refusing to grant a petition to reopen the suppression hearing. After trial had begun, defense counsel discovered by looking at sign-in sheets that police agents had visited one Brown in the Montgomery County Prison on September 26, 1978. At the suppression hearing, however, police testified that they met with Brown for the first time on October 2, 1978. Brown was appellant's cellmate and testified against him at trial that appellant told Brown he shot Scott and later disposed of the weapon. Defense counsel's theory in requesting a reopening of the suppression hearing was that police visited Brown on September 26 in order to enlist his aid in questioning appellant about the Scott murder, that Brown agreed to aid police, and that when Brown questioned appellant he was a secret police agent, which meant that Brown's testimony as to appellant's confession must be

suppressed because it was obtained in violation of appellant's Sixth Amendment rights.

The Supreme Court of the United States has held that where an individual acts under instructions as a paid informer for the government, where he presents himself as no more than a fellow inmate rather than an agent of the government, and where the suspect is in custody and under indictment at the time of his questioning by the secret agent, the information secured by the agent must be suppressed. *United States v. Henry,* 447 U.S. 264, 270–71, 100 S.Ct. 2183, 2186–87, 65 L.Ed.2d 115, 122 (1980). This is so because the agent's questioning, which is attributable to the government, secures information from the accused when counsel is not present in violation of the accused's Sixth Amendment right to counsel. *See also Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (Police testimony recounting a statement made by the indicted petitioner to a co-defendant in a parked car and overheard by a police agent. through a listening device installed in the car with co-defendant's permission was suppressed as violative of petitioner's Sixth Amendment right to counsel).

The Court in *Henry* went on to point out, however, that before charges are filed it is permissible for the government to use undercover agents to obtain incriminating statements from persons suspected of crimes but not in custody. Such information is protected by neither the Fourth nor the Fifth Amendments. *Id.* 447 U.S. at 272, 100 S.Ct. at 2187, 65 L.Ed.2d at 123. But Fourth and Fifth Amendment concerns do not control the case where "the Government has *interfered with the right to counsel* of the accused by 'deliberately eliciting' incriminating statements." *Id.* (emphasis added):

> The Government argues that this Court should apply a less rigorous standard under the Sixth Amendment where the accused is prompted by an undisclosed undercover informant than where the accused is speaking in the hearing of persons he knows to be Government officers. That line of argument, however, seeks to infuse Fifth

Amendment concerns against compelled self-incrimination into the Sixth Amendment protection of the right to the assistance of counsel. An accused speaking to a known Government agent is typically aware that his statements may be used against him. The adversary positions at that stage are well established; the parties are then "arm's length" adversaries.

When the accused is in the company of a fellow inmate who is acting by prearrangement as a Government agent, the same cannot be said. Conversation stimulated in such circumstances may elicit information that an accused would not intentionally reveal to persons known to be Government agents. Indeed, the *Massiah Court* [377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)] noted that if the Sixth Amendment "is to have any efficacy it must apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse."

*Id.* at 272–73, 100 S.Ct. at 2187–88, 65 L.Ed.2d at 123–24.

In the present case, the question is whether, were the suppression hearing reopened, the defense might be able to establish that at the time of Brown's conversations with appellant, Brown was a police agent. The evidence in favor of the proposition that the defense might so establish is twofold: Firstly, at the suppression hearing police testified they first spoke with Brown on October 2, whereas sign-in records indicate that police spoke with Brown on September 26 (suggesting the possibility of a meeting where police solicited Brown's aid). Secondly, after trial had begun defense counsel informed the court that on September 28, 1978, while in the Montgomery County Prison meeting with his client, counsel met also with Brown at Brown's request. Counsel told the court:

[After the suppression hearing] I then recalled certain things that were stated to me by Thomas Omar Brown personally on September 27, 1978 as a result of him asking to see me in the county prison, while I was present in the county prison seeing Mr. Berkheimer.

I did in fact speak to Thomas Brown on the 28th of September and I believe it was a Wednesday, at or about 9:45 to 9:50 a.m.—between 9:45 and 10:00 a.m. in the morning, and this is what Thomas Omar Brown said to me:

He said that two county detectives were over to see him yesterday, which was the 26th of September in the morning—in the afternoon—strike that—in the afternoon and that they asked to see his records, they wanted to know what his record was and that he told them.

They then said to him that we are trying to get some information regarding a weapon, which we cannot locate, concerning the case of *Commonwealth vs. Berkheimer.* They said we have looked all over the countryside and we have not been able to locate it.

*Mr. Brown then said that the detectives asked him if he could try to get some information from Mr. Berkheimer concerning the weapon or any knowledge.* They then said to him if anyone—Mr. Brown then said two county detectives, which I found out later to be Detective Thomas and Detective Shrager, if anyone asks you . . . why we are here you tell them that we are here concerning something about forged checks.

Mr. Brown then said to me, look, Bill, if there is anything I can do for Bill, fine. let me, please let me know because Bill is a fine fellow, et cetera.

Now then I said to Mr. Brown, I said, "Mr. Brown, let me tell you something, I want you to stay 90 miles away from my client and not even look at him," that's what I told him. I said, "Do not ever speak to my client about this case," I said. And I remember that exactly telling him. He didn't like the idea that I told him that.

N.T. 608–10 (emphasis added). Because this statement by defense counsel was not under oath, we shall treat it as an offer of proof: what counsel would testify in a reopened suppression hearing.

Arguments in support of the proposition that Brown was not a police agent are that both Brown and the police

testified that *Brown initiated contact with the police* and offered to testify against appellant. Further, Brown's testimony was that *before Brown met with police,* he had already had conversations with Berkheimer in which Berkheimer had allegedly admitted to participation in the crime.

As a preliminary matter, we must determine whether defense counsel, by waiting until trial to give certain reasons for his suppression motion, waived the right to raise the suppression of Brown's statement to police. Counsel moved for the suppression of the statement at the suppression hearing, but he did not at that hearing offer as a reason that Brown had told him the police requested his help in questioning Berkheimer. Rule 323 of the Pennsylvania Rules of Criminal Procedure, governing Suppression of Evidence, in pertinent part provides:

(b) Unless the opportunity did not previously exist, *or the interests of justice otherwise require,* [the motion to suppress] shall be made only after a case has been returned to court and shall be contained in the omnibus pretrial motion set forth in Rule 306. *If timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived.*

(d) The motion shall state *specifically and with particularity* the evidence sought to be suppressed, *the grounds for suppression,* and the facts and events in support thereof.

(j) If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive and binding at trial, *except upon a showing of evidence which was theretofore unavailable,* but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressibility.

(Emphasis added). In sum, suppression motions must ordinarily be made before the trial to the suppression court, they must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression, and the suppression court's determination is to be final, except in the case of evidence not earlier available. *See also Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d

159 (1971) (new evidence from Commonwealth witnesses at trial (and therefore not earlier available to the defense) indicating the manner in which police forcibly entered a house provided grounds for the trial court to suppress evidence seized pursuant to a search of the house even though the suppression court had declined to suppress items seized during the search).

■ In the instant case, although defense counsel at the time of the suppression hearing was in possession of the information he later presented to the trial court but had not presented to the suppression court (and therefore counsel was not without a previous opportunity to present evidence under Pa.R.Crim.P. 323(b); nor was the evidence he offered "theretofore unavailable under Pa.R.Crim.P. 323(j)), where an accused's Sixth Amendment rights are at stake, "the interests of justice", Pa.R.Crim.P. 323(b), require that counsel be given a hearing to reconsider whether Brown's testimony should be suppressed. Admittedly, the deciding factor in such a hearing will be the credibility of the witnesses, but a hearing is required so that sworn testimony may be presented to support counsel's offer of proof. Further, the trial court must insure that, in light of this new evidence, the Commonwealth has sustained its burden of going forward and of establishing that the evidence was not obtained in violation the rights of the accused. Pa.R.Crim.P. 323(h) (The Commonwealth has the burden of going forward and of establishing that the evidence was not obtained in violation of accused's rights).

Appellant has also assailed the sufficiency of the evidence to support the verdict. We have reviewed this claim and hold it is without merit.*

* Because of our disposition of this case, we do not decide the remaining issues raised by appellant. These issues are (1) the trial court erred in not admitting testimony of a defense witness as to prior inconsistent statements of Mr. Brown; (2) it was error to admit into evidence the .22 calibre ammunition found in appellant's home; (3) all evidence obtained as a result of searches conducted pursuant to warrants should have been suppressed because the affidavits in support of the warrants contained misstatements of material fact; (4) it was error to admit hearsay evidence of Mr. Herrlinger, a

Judgment of sentence is vacated and the case is remanded for a hearing on whether Brown's testimony should have been suppressed.

HUTCHINSON, J., joins and files a concurring opinion.

McDERMOTT, J., concurs in the result.

HUTCHINSON, Justice, concurring.

I join the majority in this case because I believe the "interests of justice" are better served by reopening the suppression hearing to consider the Sixth Amendment claim than by suffering a possible collateral attack on the conviction by a charge of ineffectiveness.

Commonwealth witness; (5) the pathologist should not have been permitted to testify as to a conclusion of homicide when his testimony was in part based on hearsay information supplied by the police; (6) it was error to allow the wife of the decedent to testify because she was not sequestered as were other witnesses pursuant to a sequestration order; (7) a juror should have been struck when it was discovered that the juror's wife sat next to decedent's wife and/or relatives during trial; (8) the sentence was improper because the court failed to place various sentencing alternatives on the record as provided by the sentencing code; (9) the sentence of the court was unduly harsh. In the event there is another appeal in this case, the remaining issues may again be raised.