634 A.2d 228

**COMMONWEALTH of Pennsylvania**

v.

**John Alan METZER, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 5, 1993.

Filed Nov. 24, 1993.

Nathan Criste, Doylestown, for appellant.

Troy Leitzel, Asst. Dist. Atty., Doylestown, for Com., appellee.

Before CIRILLO, BECK and KELLY, JJ.

KELLY, Judge.

In this appeal we are called upon to determine whether the trial court erred in its *sua sponte* reconsideration of its decision to grant appellant's motion *in limine* to exclude the results of a breathalyzer test after appellant's counsel made his opening statement to the jury in reliance upon the initial ruling. We reverse judgment of sentence and remand for a new trial.

## I. *FACTS AND PROCEDURAL HISTORY*

On October 6, 1991, at approximately 3:35 a.m., appellant struck the rear of an automobile stopped for a red light at the intersection of Oxford Valley Road and Trenton Road in Falls Township. Officer Henry P. Ward of the Falls Township Police Department responded to the report of the traffic accident. Upon arriving at the accident scene, Officer Ward observed appellant walking back from a nearby 7–11 store. Officer Ward approached appellant and directed him back to his car in order to obtain appellant's driver's license, vehicle registration and automobile insurance. While speaking to appellant, Officer Ward noted that appellant's eyes were

bloodshot and glassy. Officer Ward also detected an odor of alcohol around appellant. However, Officer Ward also noticed that appellant had no difficulty speaking or producing his driver's license and other relevant documents.

Based upon his observations, Officer Ward placed appellant under arrest and secured him in his patrol car. Officer Ward then transported appellant to the hospital for a blood test; however, appellant expressed a fear of needles. Therefore, he was taken back to the Falls Township Police Station for a breathalyzer test. The breathalyzer test was administered to appellant at 5:14 a.m., approximately one hour and forty minutes after the accident occurred. The breathalyzer test recorded appellant's blood alcohol content to be 0.12%.

Appellant was subsequently charged with driving a motor vehicle while under the influence of alcohol to such a degree as to render him incapable of safe driving pursuant to 75 Pa. C.S.A. § 3731(a)(1) [1] and driving a motor vehicle while having a blood alcohol content (BAC) of 0.10% or greater pursuant to 75 Pa.C.S.A. § 3731(a)(4). [2]

Shortly before trial, appellant filed an omnibus pre-trial motion. In Part I of this omnibus pre-trial motion, appellant argued that he had been improperly charged with violating two subsections of the same statute, 75 Pa.C.S.A. § 3731 *et seq.*, in one criminal information even though each subsection alleges a different manner and standard for violating the statute. In Part II of his omnibus pre-trial motion, appellant alleged that Officer Ward had failed to properly apprise him of his *Miranda* rights; thus, any statement that he made to Officer Ward must be suppressed. Appellant further alleged

1. 75 Pa.C.S.A. § 3731(a)(1) states as follows:
 A person shall not drive, operate or be in actual physical control of the movement of any vehicle:
 while under the influence of alcohol to a degree which renders the person incapable of safe driving; . . . .

2. 75 Pa.C.S.A. § 3731(a)(4) states as follows:
 A person shall not drive, operate or be in actual physical control of the movement of any vehicle:
 while the amount of alcohol by weight in the blood of the person is 0.10% or greater; or . . . .

in Part II of his omnibus pre-trial motion that the breathalyzer equipment used to administer his breathalyzer test was improperly calibrated under the applicable rules and regulations of the Department of Transportation. Oral argument was held on appellant's omnibus pre-trial motion. As a result of oral argument, appellant's statements to Officer Ward were suppressed. However, the results of the breathalyzer test were not suppressed.

On the day of trial, appellant filed a motion *in limine* alleging that because the breathalyzer test was taken one hour and forty minutes after his arrest and the Commonwealth possessed no admissible evidence regarding the time at which he consumed his last alcoholic beverage on the morning of the accident, the Commonwealth was unable to relate back the results of the breathalyzer test to the time of the accident as required by recent Supreme Court cases, *Commonwealth v. Modaffare*, 529 Pa. 101, 601 A.2d 1233 (1992) and *Commonwealth v. Jarman*, 529 Pa. 92, 601 A.2d 1229 (1992). Thus, appellant maintained, the results of the breathalyzer test were inadmissible at appellant's trial for violating of 75 Pa.C.S.A. § 3731(a)(1) and 75 Pa.C.S.A. § 3731(a)(4).

After oral argument was held on appellant's motion *in limine*, the trial court reviewed the relevant case law and directed that the results of the breathalyzer test be excluded from evidence. The trial court then ordered the case to proceed to trial. The Commonwealth did not choose to appeal this ruling as it is permitted to do when it certifies that the exclusion of evidence substantially handicaps the prosecution. *See Commonwealth v. Steding*, 480 Pa. 485, 391 A.2d 989 (1978); *Commonwealth v. Parrella*, 416 Pa.Super. 131, 610 A.2d 1006 (1992); Pa.R.App.P. 311(d). A jury was then selected and the trial began.

In his opening statement to the jury, defense counsel stated that the Commonwealth's evidence of appellant's alleged intoxication consisted exclusively of the testimony of the driver of the other car, Charlene D. Rolland, and the testimony of the arresting officer, Henry P. Ward. After counsel had made their opening statements, the trial court called a recess,

excused the jury for lunch and called counsel into his chambers. At this chambers conference, the trial court stated it was reversing its earlier ruling excluding the results of the breathalyzer test and directed that the breathalyzer results be admitted into evidence. At this point, appellant motioned for a mistrial. This motion was denied by the trial court. Instead, the trial court gave appellant the alternatives for dissipating any prejudice, which might have accrued to appellant, of either selecting a curative instruction or making another opening statement. Appellant selected the curative instruction alternative.

The jury returned from lunch and the trial court opened the proceedings with a curative instruction regarding the admission of some evidence that was not referred to in counsel's opening statements. (N.T. 2/6/92 at 55–57). At the close of the Commonwealth's case in which it presented the breathalyzer results together with the testimony of Ms. Rolland and Officer Ward, the trial court sustained appellant's demurrer to the portion of the charge which stated that appellant had violated 75 Pa.C.S.A. § 3731(a)(4) by driving while having a BAC. of 0.10% or greater. Appellant was subsequently convicted of § 3731(a)(1), driving while under the influence of alcohol to such a degree as to render him incapable of safe driving, 75 Pa.C.S.A. § 3731(a)(1). Appellant filed timely post-trial motions which were denied. Appellant was sentenced to serve not less than forty hours nor more than one year in the county prison. Appellant was also fined three hundred dollars. The trial court stayed imposition of sentence pending the filing of an appeal. This timely appeal followed.

Appellant presents the following issues for our consideration.

A. DID THE COURT ERR BY ADMITTING INTO EVIDENCE THE RESULTS OF A BREATHALYZER TEST TAKEN ONE HOUR AND FORTY MINUTES AFTER ARREST WITHOUT PRESENTATION OF EXPERT TESTIMONY TO RELATE BACK THE RESULTS OF THE TEST TO THE TIME OF THE ACCIDENT?

B. DID THE COURT ERR IN ITS INSTRUCTIONS TO THE JURY REGARDING THE MEANING OR SIGNIFICANCE OF THE BREATHALYZER EVIDENCE FROM A SCIENTIFIC AND A LEGAL STANDPOINT?

C. DID THE COURT ERR BY REFUSING A DEFENSE REQUEST FOR A MISTRIAL FOLLOWING OPENING STATEMENTS AFTER REVERSAL OF A PRE-TRIAL RULING THAT NO BREATHALYZER EVIDENCE WOULD BE ADMISSIBLE?

D. WAS THE EVIDENCE PRESENTED SUFFICIENT TO SUSTAIN A VERDICT AS A MATTER OF LAW; AND WAS THE VERDICT AGAINST THE WEIGHT OF THE EVIDENCE.

Appellant's Brief at 3.

For the purposes of clarity, we begin by addressing appellant's third issue raised in this appeal. Appellant's third issue concerns whether the trial court erred in failing to grant appellant's motion for mistrial where the court *sua sponte* reversed its ruling granting appellant's motion *in limine* to exclude the breathalyzer results after appellant's counsel had relied upon the earlier ruling when commenting upon the evidence to be presented in his opening statement to the jury.

## II. *STANDARD OF REVIEW*

At the outset, we note that an appellate court's review of the grant or denial of a new trial is limited to determining whether the trial court abused its discretion or committed an error of law which controlled the outcome of the case. *Commonwealth v. Morris*, 513 Pa. 169, 175, 519 A.2d 374, 376 (1986). "The general conduct of a trial is committed to the broad discretion of the trial judge." *Commonwealth v. Thomas*, 346 Pa.Super. 11, 20, 498 A.2d 1345, 1349 (1985) (citations omitted). A reviewing court will not find that a trial court abused its discretion in denying a motion for a new trial unless the trial court failed to remedy any prejudice which may have been caused to a defendant by an in-court statement or event. *Commonwealth v. Tribblett*, 242 Pa.Super. 164, 169,

363 A.2d 1212, 1214 (1976), citing *Commonwealth v. Hawkins,* 448 Pa. 206, 292 A.2d 302 (1972).

Courts are hesitant "to grant a motion for a mistrial. when the conduct complained of was not the product of the court, counsel, or the parties." *Tribblett, supra* 242 Pa.Super. at 169, 363 A.2d at 1214, *citing Commonwealth v. Gwyn,* 441 Pa. 546, 272 A.2d 891 (1971); *Commonwealth v. Garrison,* 443 Pa. 220, 279 A.2d 750 (1971). "However, a new criminal trial is required when a judge's remark is prejudicial; that is, when it is of such nature or substance or delivered in such a manner that it may reasonably be said to have deprived defendant of a fair and impartial trial." *Commonwealth v. Hammer,* 508 Pa. 88, 494 A.2d 1054 (1985). "The presence or occurrence of certain errors at trial, including ... bias on the part of the judge ... requires automatic reversal." *Commonwealth v. Cherry,* 474 Pa. 295, 307, 378 A.2d 800, 806 (1977), citing *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710 (1967). Additionally, "evidentiary rulings are committed to the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of that discretion." *Commonwealth v. Apollo* 412 Pa.Super. 453, 461, 603 A.2d 1023, 1027 (1992) (citing *Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982); *Commonwealth v. Davis,* 394 Pa.Super. 591, 576 A.2d 1005 (1990)).

### III. *PRE–TRIAL MOTION TO EXCLUDE EVIDENCE*

### A. *MOTION IN LIMINE*

A motion *in limine* is a pre-trial application before a trial court made outside the presence of a jury, requesting a ruling or order from the trial court prohibiting the "opposing counsel from referring to or offering into evidence matters so highly prejudicial to the moving party that curative instructions cannot alleviate an adverse effect on the jury.[3] *See* Black's

**3.** Although a motion *in limine* is generally made before trial, the trial court may elect to rule upon the application at a later time. The parties are prohibited from referring to the evidence at issue during trial until the court makes a final ruling. Despite the lack of finality of the ruling,

Law Dictionary 914 (5th ed. 1979). *See also Commonwealth v. Johnson,* 399 Pa.Super. 266, 582 A.2d 336 (1990), *appeal granted,* 529 Pa. 617, 600 A.2d 534 (1991) (citing L. Packel & A.B. Poulin, *Pennsylvania Evidence* § 103.3 (1987)). The purpose of a motion *in limine* is two fold: 1) to provide the trial court with a pre-trial opportunity to weigh carefully and consider potentially prejudicial and harmful evidence; and 2) to preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the defendant, thus reducing the possibility that prejudicial error could occur at trial which would force the trial court to either declare a mistrial in the middle of the case or grant a new trial at its conclusion. 75 Am.Jur.2d § 94 & § 98.

 Further, a ruling on a pre-trial motion *in limine* provides counsel with a basis upon which to structure trial strategy. Blumenkopf, *The Motion in Limine: An Effective Procedural Device With No Material Downside Risks,* 16 N.Eng.L.Rev. 171 (1981). The motion *in limine* is an effective procedural device with no material downside risk. *Id.* at 171–72. Once the court has pronounced its decision, the matter before it will proceed unless the Commonwealth elects to appeal an adverse ruling. *Commonwealth v. Cohen,* 529 Pa. 552, 557, 605 A.2d 1212, 1215 (1992). For purposes of appealability, the court's ruling on a motion *in limine* is exactly the same as a pre-trial suppression order. *Id.* at 557, 605 A.2d at 1215. Thus, both a suppression order and a pre-trial motion *in limine* excluding evidence are immediately appealable by the Commonwealth. *Id.* at 557, 605 A.2d at 1215.

### B. *MOTION TO SUPPRESS*

 It is well-settled law that motions to suppress evidence are decided prior to the beginning of trial. *Commonwealth v.*

there is no doubt in either parties' mind that the evidence will remain outside the province of the jury until the court rules, but may, if the judge decides, be ruled admissible later in the trial. In that event, counsel will be prepared to proceed accordingly. Colbert, A Symposium on the Sanctuary Movement: The Motion *In Limine:* Trial Without Jury: A Government's Weapon Against the Sanctuary Movement, 15 Hofstra L.Rev. 5 n. 6 (1986).

*Berkheimer*, 501 Pa. 85, 91, 460 A.2d 233, 236 (1983); *Commonwealth v. Harmon*, 469 Pa. 490, 494, 366 A.2d 895, 897 (1976); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, 308 (1963). Moreover, pre-trial rulings on the suppression of evidence are final. Pa.R.Crim.P. 323. In sum, suppression motions must ordinarily be made before the trial to the suppression court, they must be made with specificity and particularity as to the evidence sought to be suppressed and the reasons for the suppression, and the suppression court's determination is to be final, except in the case of evidence not earlier available. *Berkheimer*, *supra* at 91, 460 A.2d at 236.

Although a motion *in limine* and a suppression motion are distinct from each other because a suppression motion specifically protects constitutional rights and a motion *in limine* precludes evidence constitutionally obtained but which is prejudicial to the moving party, their protections, at times, overlap. *Commonwealth v. Cohen*, *supra* 529 Pa. at 557, 605 A.2d at 1215. More importantly, however, both motions settle, before trial, issues regarding the exclusion or admission of evidence.

Our Supreme Court in *Commonwealth v. Bosurgi*, *supra* held "that a pretrial suppression order is, in its practical effect, a final order...." *Id.* 411 Pa. at 64, 190 A.2d at 308. Further, that "the grant of a motion *in limine* ... is identical in effect, to a suppression order and characterized by identical indicia of finality." *Id.* The court's concern in its discussion in *Bosurgi* and its progeny was with the finality of the ruling for purposes of appeal. Implicit in the court's discussion, however, is the importance of finality for purposes of trial strategy. *Bosurgi*, *supra* at 63, 190 A.2d at 308. *See also Commonwealth v. Cohen*, *supra* at 558, 605 A.2d at 1215.

From *Commonwealth v. Bosurgi*, *supra*, we glean the proposition that, from both the Commonwealth's and the defendant's perspective, a pre-trial suppression ruling is final for purposes of the admissibility of evidence at trial. The Commonwealth's concern, of course, is whether it will be foreclosed entirely from prosecuting as a result of the sup-

pression ruling or be so "substantially [handicapped]" as to be unable to present an effective prosecution. *Commonwealth v. Bosurgi, supra.* The trial would proceed, and if the Commonwealth did not prevail, it would be forever barred from challenging the pre-trial ruling. Thus, for purposes of fairness to the Commonwealth and in the interest of justice, the pre-trial suppression ruling must be final to allow the Commonwealth an opportunity to appeal. *Id.* 411 Pa. at 64, 190 A.2d at 308–09. Unlike the Commonwealth, the defendant may appeal post-trial from a pre-trial suppression ruling. Unless the Commonwealth appeals an adverse suppression ruling, the defendant proceeds with his case, basing his defense on the court's pre-trial ruling, knowing that the ruling may be challenged post-trial should the verdict be rendered in the Commonwealth's favor. *Bosurgi, supra,* at 64, 190 A.2d at 308.

Thus, the finality of the court's pre-trial ruling plays a significant factor in both the Commonwealth's and the defense's trial strategy. Inherent in the finality of a pre-trial suppression ruling is knowing how to proceed therefrom. For the Commonwealth, an adverse ruling means it must immediately take an appeal. Likewise, the defense knows that it must either defend against the evidence and appeal post-trial or proceed in reliance upon suppression of the evidence.

Although an adverse ruling for the defendant is not immediately appealable, our courts have held pursuant to Pa.R.Crim.P. 323(j) that upon the presentation of new evidence, a trial court may reverse its own pre-trial suppression ruling. However, as our Supreme Court stated in *Commonwealth v. Berkheimer,* 501 Pa. 85, 91, 460 A.2d 233, 236 (1983), the pre-trial ruling may be reversed by the trial court only upon the presentation by the defendant of new evidence that was not available at the time of the suppression hearing and became available to defense counsel after trial had begun. *Id. See also Commonwealth v. Monarch,* 510 Pa. 138, 507 A.2d 74 (1986). Furthermore, the court must conduct another hearing to reconsider the suppression or admissibility of the evidence. *Commonwealth v. Branch,* 292 Pa.Super. 425, 437 A.2d 748

(1981). Absent the introduction of new evidence that was unavailable before the hearing, however, a pre-trial ruling may not be reversed at trial. *Commonwealth v. Wanfield,* 418 Pa. 301, 211 A.2d 452 (1965). Additionally, because our Supreme Court has held that a motion *in limine* is effectively the same as a motion to suppress, any ruling thereon is also "final, conclusive, and binding at trial, . . . ." Pa.R.Crim.P. 323(j).

## IV. TRIAL COURT PROCEDURES

Appellant contends that the trial court erred in failing to grant his request for a mistrial after it had reversed its ruling regarding the exclusion of the breathalyzer test results. Appellant argues that the trial court undermined counsel's credibility before the jury by allowing evidence to be presented by the Commonwealth which, in his opening statement, defense counsel had asserted would not be produced by the Commonwealth. Appellant claims that the trial court further compromised his counsel's ability to effectively advocate for his client by offering a curative instruction which told the jury that a piece of evidence that was excluded would now be included. We agree.

 Instantly, counsel relied on the pre-trial judicial determination that the results of the breathalyzer test would not be used as evidence in the case against his client. He prepared his case accordingly. In his opening statement, he told the jury what evidence they would hear regarding the intoxication of his client. Appellant's counsel posited that the evidence against his client consisted exclusively of the driver of the other car and the arresting officer's testimony. Because the court had ruled that the results of the breathalyzer test would not be entered as evidence, counsel excluded it and affirmatively asserted that *no other evidence* of intoxication would be introduced. (N.T. 2/6/92 at 24–31).

 Immediately after counsel had finished his opening statement, specifically emphasizing the lack of compelling evidence by the Commonwealth, the trial court called for a recess and dismissed the jury for lunch. The court then called

counsel into his chambers and informed them that he had reconsidered his ruling upon the evidence and had decided to reverse it.[4] As no new evidence had been brought before the judge by either counsel, nor had the Commonwealth appealed the trial court's pre-trial ruling in the interim, the trial court's *sua sponte* reconsideration of its earlier ruling was improper. *See Commonwealth v. Berkheimer, supra; Commonwealth v. Wanfield, supra.*

After the lunch recess, the court returned and expressly told the jury that evidence which had previously been ruled inadmissible would be presented to them. At that point, appellant's trial strategy was eradicated. Counsel had before him a new case. Moreover, defense counsel was forced to defend against evidence that he had told the jury would be absent. The trial court effectively placed counsel in a compromised position, thereby prejudicing appellant's opportunity for a fair trial. Also, defense counsel's credibility was placed at issue before the jury and his ability to advocate for his client was seriously handicapped.

Foremost in defense counsel's mind as he prepares his case is the evidence which will be presented against his client. A significant part of counsel's strategy will be built upon what evidence he has to proffer and what he believes opposing counsel will present. Counsel will posture his defense accordingly. Pre-trial motions are designed to settle matters prior to trial so that counsel may come to trial prepared to present the case. A lawyer's trial strategy, course of action, theory of the case, opening statement, examinations of witnesses, and closing statement all derive from the trial judge's determination of pre-trial motions. Counsel has the right to rely on authoritative rulings made by the trial court prior to trial

---

**4.** We note that a criminal trial begins at the point where jeopardy has attached. *See Commonwealth v. Bronson,* 482 Pa. 207, 393 A.2d 453 (1978). In a criminal jury trial, jeopardy attaches when a jury is sworn, *see Commonwealth v. Terry,* 513 Pa. 381, 521 A.2d 398, *cert. denied,* 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987). In a bench trial, however, jeopardy attaches when the trial court begins to hear evidence. *See Commonwealth v. Jung,* 366 Pa.Super. 438, 531 A.2d 498 (1987).

excluding evidence. Thus, when rulings are reversed absent new evidence, the course of the trial is irrevocably altered, and counsel has a new case.

The Commonwealth argues that the cautionary instruction issued by the trial court "cured" any harm the appellant may have suffered as a result of the trial court's reversed evidentiary ruling. We cannot agree.

 Determining whether prejudice has occurred is a fact specific inquiry. *Commonwealth v. Smidl,* 395 Pa.Super. 266, 577 A.2d 210 (1990) (trial judge committed reversible, prejudicial error by not delivering, *sua sponte,* an alibi instruction); *Commonwealth v. Divomte,* 262 Pa. 504, 506, 105 A. 821, 822–23 (1919) (trial judge committed error in his instructions to the jury regarding the governing law of the case). The purpose of a pre-trial motion *in limine* is to prevent prejudicial evidence from reaching the jury, based on the theory that "once the 'skunk is in the box,' the odor is ineradicable." Blumenkopf, 16 N.Eng.L.Rev. at 173 (quotations omitted).

 The court's curative instructions must be viewed in the context of what occurred, *i.e., what* evidence was previously excluded and subsequently ruled admissible, and *when* it was ruled admissible. The breathalyzer test results may have been the strongest piece of evidence as proof of appellant's intoxication. The trial court's timing, immediately after counsel had made his opening statement, promoted the importance of the evidence.[5] Moreover, the jury's attention was drawn to the fact that appellant's counsel wanted to keep that piece of evidence from the jury because he did not mention it in his

---

5. So, there will be some evidence which will be coming into the case which the lawyers have not referred to in their opening statements. Do not hold it against either lawyer because the particular lawyer did not mention every bit of evidence that was going to come in or whether the sum total of it all was, because they didn't know I was going to change my mind and reverse my ruling.

I believe it was appropriate that I do so in order to comply with what I believe the appropriate provisions in the law are. You needn't concern yourself any further with it, other than to not hold it against either side because something may not have been mentioned in the lawyer's opening statement that could have been mentioned.... (N.T. 2/6/92 at 56–57).

opening statement and implicitly asserted that there was no such evidence:

\* \* \* \* \* \*

You will hear testimony that the officer did not see any kind of stagger, did not see the defendant attempt to hold onto anything for balance, and that he had no apparent difficulty following the requests of the police officer in regard to his instructions given at the scene of the accident.

Ladies and gentlemen, there also will be testimony in this case regarding the communications that took place between the Commonwealth's prosecutor and the defendant on this evening. And the defendant, I believe, will show that the responses provided by the defendant to the questions that were asked by the prosecutor were responsive; that when he was asked to do something, he did it; that when he was given a direction, he apparently understood it and followed it.

Ladies and gentlemen, the defense through the testimony that's being presented here will suggest that there was nothing about the manner in which this man behaved on the evening of October the 6th, that would suggest that he was under the influence of intoxicating liquor; that there being no evidence of impaired ability to walk, talk, bend over or do any other normal coordinated activity that a person who had not been drinking would be unable to do.

(N.T. 2/6/92 at 28–29).

The prejudice to appellant occurred when the trial judge reversed his earlier ruling regarding the inadmissibility of the results of the breathalyzer test after appellant's counsel had detrimentally relied on this ruling in his opening statement. Thus, the trial court's improper reconsideration of its earlier ruling and its subsequent attempt to issue a curative instruction rendered appellant's counsel incredible in the eyes of the jury. Therefore, appellant's chances for a fair determination of his guilt or innocence to the charge against him by this particular jury were impermissibly compromised. Accordingly, the only remedy available to remove the prejudice to

appellant was for the trial court to declare a mistrial and to relist the case for trial before a different jury. *See Commonwealth v. Scarfo,* 416 Pa.Super. 329, 382, 611 A.2d 242, 268 (1992) (a defendant is entitled to a fair determination of his guilt). Because the trial court failed to employ this remedy to dissipate the prejudice that accrued to appellant as a result of the trial court's rulings regarding the admissibility of the breathalyzer results, appellant is entitled to a new trial.

## V. *ADMISSIBILITY OF BREATHALYZER RESULTS AT NEW TRIAL*

The breathalyzer evidence, however, is not admissible at appellant's new trial for violating 75 Pa.C.S.A. § 3731(a)(1). We are constrained to reach this result because after appellant's motion *in limine* to exclude the results of the breathalyzer test was granted, the Commonwealth did not elect to appeal this ruling as it is permitted to do when a pre-trial ruling excluding evidence substantially handicaps its ability to prosecute a defendant. *See Commonwealth v. Parrella, supra.* Rather, the Commonwealth freely chose to proceed with its prosecution of appellant without the breathalyzer results as part of the evidence. As the Commonwealth must appeal an adverse pre-trial order granting a motion *in limine* to exclude evidence or be forever barred from contesting the ruling, *see Commonwealth v. Cohen, supra,* its failure to appeal the trial court's initial exclusion of this evidence irrevocably established this ruling as the controlling legal rule of this case. Thus, the trial court's subsequent reconsideration of its initial ruling excluding the breathalyzer evidence after appellant's trial had commenced has no bearing on whether this evidence should be admitted at appellant's new trial. Therefore, the Commonwealth is not entitled to utilize the breathalyzer results at appellant's new trial. *See Commonwealth v. Moore,* 246 Pa.Super. 163, 369 A.2d 862 (1977); *Commonwealth v. Throckmorton,* 241 Pa.Super. 62, 359 A.2d 444 (1976) (a suppression motion may be litigated after the grant of a new trial only if there has been no prior determination of the issue).

■ Our ruling regarding the non-admissibility of the breathalyzer evidence will not, however, preclude appellant's retrial for violating 75 Pa.C.S.A. § 3731(a)(1), as the other evidence presented at trial, the testimony of Officer Henry Ward and the testimony of the driver of the other car, Charlene D. Rolland, when viewed in the most favorable light to the Commonwealth, could be sufficient to support a conviction of appellant. *See Commonwealth v. Smith,* 523 Pa. 577, 582, 568 A.2d 600, 603 (1989) (where improperly admitted evidence has been allowed to be considered by the jury, its subsequent deletion does not justify a finding of insufficient evidence to support conviction; the proper remedy in such a case is the grant of a new trial).

## CONCLUSION

We hold that the trial court erred in its improper *sua sponte* reconsideration of its order excluding the results of the breathalyzer test after the Commonwealth failed to appeal this ruling and appellant's counsel had made his opening statement in his reliance upon it. Accordingly, appellant's motion for a mistrial should have been granted due to the prejudicial effect the trial court's untimely reversal of its initial decision to exclude this evidence had on appellant's counsel's credibility in the eyes of the jurors. Thus, appellant is entitled to a new trial. Because the Commonwealth failed to appeal the trial court's initial ruling excluding the breathalyzer results, this ruling is the law of this case and the breathalyzer results are inadmissible at appellant's new trial.[6]

The judgment of sentence is reversed; the case is remanded for a new trial. Jurisdiction is relinquished.

---

**6.** Because of our disposition of appellant's third issue on appeal granting him a new trial and excluding the breathalyzer evidence from that trial, we need not address the other issues raised by appellant in this appeal.