J-A21011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHANN JAMES, | |
| Appellant | No. 243 EDA 2013 |

Appeal from the Judgment of Sentence August 31, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004752-2011

BEFORE:  BOWES, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 07, 2014**

Rashann James appeals from his August 31, 2012 judgment of sentence of fifteen to thirty years incarceration followed by five years probation.  The trial court imposed sentence after a jury convicted Appellant of attempted murder, aggravated assault, firearms not to be carried without a license, carrying a firearm on a public street in Philadelphia, and possession of an instrument of crime.  After careful review, we affirm.

The facts giving rise to the charges were summarized by the trial court:

> On November 19, 2010, at approximately 1:00 p.m., the Complainant (Stephanie Alexander) walked to a laundromat with her son Khalil, her daughter Shanay, and her granddaughter

---

[*]  Retired Senior Judge assigned to the Superior Court.

Assaiah. Before they arrived, Shanay and Assaiah went to another store while the Complainant and Khalil walked to the laundromat. While walking, Complainant noticed two men outside of a store on the 2600 block of Stanley Street. She recognized one man, Tyree Tucker, also known as "Wink."

Once they arrived at the laundromat, Complainant and her son entered and asked Johnny, the owner, for change. After receiving the change, the Complainant turned around and saw Appellant approximately [twenty] feet away. The Appellant pulled a gun from his waistband and frantically pointed the gun at Complainant, Khalil, and Johnny, and said "Don't F-ing move." Johnny immediately fled to the back of the store and Khalil followed, leaving the Complainant alone with Appellant.

The Complainant approached the Appellant and said, "What do you mean, don't f-ing move? Are you serious?" Appellant then approached Complainant, put the gun to the right side of her head, and stated, "I said, don't f-ing move." Complainant dropped to her knees and put her head down just as Appellant pulled the trigger. Complainant heard a click and thought she "was gone." Complainant heard more clicks, looked up, and saw that Appellant's gun had jammed. The Appellant tried to unjam the gun, but he was unable to. The Appellant then spotted the laundromat's camera and fled. Subsequently, the Complainant called the police.

After the police arrived, they took the Complainant and Shanay to the Central Detectives Division's Special Investigations Unit. At Central Division, the Complainant met with Detective Edward Keppol ("Detective Keppol"), and she explained how the Appellant tried to murder her. The Complainant described the Appellant as a black male, approximately [forty-three to forty-four] years old, [six foot two inches], a thin build, light skinned, and a small beard under his chin. Based on the Complainant's description, Detective Keppol ran a computer image search and showed her electronic pictures of various suspects. However, the Complainant said none matched her assailant. A week after the incident, Detective Keppol showed the Complainant additional pictures at her house, but she again said the Appellant's photo was not there. On December 17, 2010, Detective Keppol went to the Complainant's home a second time. On this date, Detective Keppol showed her a photo array of seven people, and she quickly identified the

Appellant. On April 26, 2011, the Complainant identified Appellant again at a preliminary hearing.

After the preliminary hearing, Khalil gave the Complainant a cell phone with a caller on the other end of the line. The Complainant took the phone and heard Appellant's voice. The caller identified himself as "Rashann," and apologized for his actions. Furthermore, the Appellant explained that "Wink" sent him to the laundromat to retaliate against the Complainant because one of her son's (Kaheem) cooperated with the police who investigated an unrelated murder on August 22, 2010 on the 2600 block of Stanley Street.

Trial Court Opinion, 11/27/13, at 4-6. (footnotes and internal citations to the record omitted) (emphases omitted).

On September 21, 2011, Appellant filed an omnibus pre-trial motion *in limine* seeking to exclude three evidentiary matters. First, Appellant sought to preclude the Commonwealth from introducing evidence of two murders, purportedly unrelated to this case, occurring on Redner and Stanley Streets, respectively. Second, Appellant sought to exclude evidence regarding shots fired at Complainant's house. Finally, Appellant argued that testimonial evidence of an admission made to Complainant over the phone was inadmissible.

On January 10, 2012, after argument on the motion, the trial court excluded evidence of the Redner Street murder[1], but tentatively permitted

_____

[1] The Redner Street murder is a reference to CP-51-CR-0009461-2011, a murder case that was pending against Appellant at the time of the instant trial. The Commonwealth advised the court that it did not intend to mention that case. N.T., 1/10/12, at 8. Appellant was subsequently convicted on
*(Footnote Continued Next Page)*

evidence of the Stanley Street murder to be introduced as it was relevant to motive in the present case. That evidence was subsequently admitted. Evidence that shots were fired at Complainant's house was ruled admissible only if offered to explain Complainant's fear of testifying.[2] The trial court ruled that the phone conversation during which Appellant admitted that he was the assailant at the laundromat was sufficiently authenticated to be admissible.

The jury convicted Appellant of the aforementioned charges on January 13, 2012, and the court sentenced him to an aggregate sentence of fifteen to thirty years incarceration followed by five years probation. On September 10, 2012, Appellant filed a post-sentence motion alleging, *inter alia*, that the evidence was insufficient to sustain the verdict, that the verdict was against the weight of the evidence due to inconsistent identification testimony, that the court's delay in ruling on pretrial motions was prejudicial, and that the trial court abused its discretion in admitting evidence of the telephone call without authentication. On January 9, 2013, this motion was dismissed by operation of law pursuant to Pa.R.Crim.P.

_____
*(Footnote Continued)*

September 11, 2013 of two counts of first-degree murder, among other charges, and sentenced to two consecutive terms of life imprisonment without parole. Appellant was not charged in connection with the Stanley Street murder.

[2] Since Complainant willingly testified at trial, the trial court did not permit evidence that shots were fired at her house to be admitted.

720(B)(3). Appellant immediately appealed and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on November 27, 2013.

Appellant's Statement of the Questions Involved includes argument. We excise the argument and restate the questions as follows:

> I. Did the trial court abuse its discretion by allowing [Complainant] to testify to the contents of [a phone call] that included both evidence of motive and the only evidence of a confession?
>
> II. Did the trial court abuse its discretion by allowing both [Complainant] and Detective Brian Peters to testify about an unsolved murder that did not involve [Appellant]?
>
> III. Was the evidence insufficient as a matter of law to identify [Appellant] as the perpetrator beyond a reasonable doubt?
>
> IV. Did the trial court abuse its discretion by not ruling on [Appellant's pre-trial motions *in limine* to exclude evidence of both the phone call and the prejudicial other acts evidence] until after the opening arguments?

Appellant's brief at 4-5.

We first address Appellant's third issue, which challenges the sufficiency of the evidence, because a sufficiency challenge, if successful, entitles the defendant to discharge.[3]

_____

[3] We do not evaluate sufficiency of the evidence challenges based upon review of a diminished record. **Commonwealth v. Palmer**, 751 A.2d 223, 227 (Pa.Super. 2000). If the evidentiary issues raised by Appellant are deemed meritorious, the proper relief is a new trial.

In analyzing such claims, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Brown*, 2012 PA Super 150, 52 A.3d 320, 323 (Pa.Super. 2012). Critically important, we must draw all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. *Commonwealth v. Hopkins*, 2013 PA Super 122, 67 A.3d 817, 820 (Pa.Super. 2013). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Brown*, *supra* at 323. Of course, "the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id*.

The Commonwealth can meet its burden "by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." Id. It is improper for this Court "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*. Additionally, "the entire record must be evaluated and all evidence actually received must be considered." *Id*.

*Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*).

Appellant claims the evidence is legally insufficient because Complainant's testimony identifying him as her assailant was inconsistent. He points to the fact that Complainant first described her assailant as six-foot-two inches tall, then later as five-foot-seven inches tall.[4] Appellant's

_____

[4] Detective Edward Keppol testified that the Complainant described her assailant as a "[b]lack male, approximately 43 to 44 years of age approximately 6-2; thin build; light skinned; small beard under his chin; wearing a dark-colored hooded sweat jacket; and he was also missing a
*(Footnote Continued Next Page)*

- 6 -

brief at 37. Complainant initially reported that the gun placed at her head was black in color, and subsequently identified it as silver. *Id*.

The evidence herein, when viewed in the light most favorable to the Commonwealth, is legally sufficient to support Appellant's convictions. Complainant testified that her assailant was one and one-half feet to two feet away from her for several minutes. His face was uncovered. She described him to police as a black male with light skin, tall, with a beard, and missing teeth. He was the same man she had seen with the man she knew as "Wink," later identified as Tyree Tucker, standing outside a store on Stanley Street as she entered the laundromat. N.T., 1/12/12, at 14-15. The Complainant subsequently selected Appellant as her assailant from a photographic array. She identified him at a preliminary hearing and again at trial as the man who held the gun to her head in the laundromat. *Id*. at 8. She was completely sure that Appellant was the man who attempted to kill her. We find such identification testimony legally sufficient to support the convictions.

Under the guise of sufficiency, Appellant argues that inconsistencies in the Complainant's description of her assailant and the color of the gun and the "volume and quality" of the Commonwealth's evidence rendered the

*(Footnote Continued)* ────────────

couple front teeth." N.T., 1/12/12, at 117. The detective confirmed that Appellant was approximately six feet tall. *Id*. at 127.

evidence insufficient. He also points out that four eyewitnesses were not called to testify.[5]

Any alleged inconsistencies in the Complainant's testimony and statements go to the weight rather than sufficiency of the evidence. The same is true of attacks on the "volume and quality" of the Commonwealth's evidence.[6] Appellant generally alleged that the verdict was against the weight of the evidence in his post-trial motion, and he reiterated that claim in his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Thus, it is preserved. Regardless, it affords no relief.

In **Commonwealth v. Clay**, 64 A.3d 1049, 1054-1055 (Pa. 2013) (internal citations and quotations omitted), our High Court explained the trial court's standard of review of a weight claim:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight

---

[5] The Commonwealth presented the testimony of Detective Edward Keppol, who detailed his investigation of the instant case. He testified that he interviewed Shanay, the Complainant's daughter. He attempted to interview two of the witnesses but they were unavailable.

[6] Appellant's allegation that the evidence was insufficient because the phone-call confession was not credibly authenticated will be discussed in conjunction with alleged errors in the admission of evidence. **See infra** n.3.

with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

Our standard of review is distinct. We review the trial court's exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence. *Id*. Since the trial court observed the witnesses as they testified, saw the evidence presented, we "will give the gravest consideration to the findings and reasons advance by the trial judge when reviewing a trial court's determination" of a claim that the verdict is against the weight of the evidence. *Id*. For that reason, the trial court's ruling on a weight of the evidence claim is "[o]ne of the least assailable reasons for granting or denying a new trial." *Id*. "Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id*. at 1055.

The trial court ruled on Appellant's weight claim and concluded that that the jury's verdict did not shock the conscience. The court concluded that the jury found the Complainant's testimony credible and the verdict was "appropriately based on the facts." Trial Court Opinion, 11/27/13, at 29. We find no abuse of discretion.

Next, Appellant assails the trial court's rulings regarding the admissibility of certain pieces of evidence. Our standard of review of the trial court's evidentiary rulings is as follows:

> Admission of evidence is within the sound discretion of the trial court, and this Court will find the trial court abused its discretion only where it is revealed in the record that the court did not apply the law in reaching its judgment or exercised manifestly unreasonable judgment or judgment that is the result of partiality, prejudice, bias, or ill will.

*Commonwealth v. McKellick*, 24 A.3d 982, 986 (Pa.Super. 2011).

Appellant first challenges the trial court's admission of a phone conversation, allegedly between Appellant and Complainant, which contained both a confession and evidence of motive. Appellant's brief at 16. Appellant relies upon *Commonwealth v. Carpenter*, 372 A.2d 806, 808 (Pa. 1977), in support of his claim that the telephone call was not properly authenticated. He contends that since the Complainant had never met him or heard his voice before the day at the laundromat, had never heard his voice on the telephone, and did not hear his voice between the day of the assault and the phone call, she could not have the requisite familiarity with his voice to authenticate it. He directs our attention to *Commonwealth v. Woodbury*, 477 A.2d 890 (Pa.Super. 1984), where the prosecution's chief witness positively identified the voice she heard outside her door as the defendant's voice based on a long acquaintanceship. Furthermore, Appellant

- 10 -

argues that evidence tantamount to a confession could not be harmless error. *See Arizona v. Fulminante*, 499 U.S. 279 (U.S. 1991).

In *Carpenter*, *supra*, our Supreme Court reiterated that, "before one of two parties to a telephone conversation may testify as to the substance of the conversation, the identity of the other party must be established." Pa.R.E. 901(b)(5) (rescinded and replaced, effective March 18, 2013) permits one to render an opinion identifying a voice "based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Generally, the identity of a caller is established by witness testimony recognizing the voice, but it can also be established through circumstantial evidence. In *Carpenter*, the defendant was charged with third-degree murder for fatally stabbing a woman. The victim's husband recognized the defendant's voice on the telephone and identified him to the police detective as he handed over the receiver. The caller's subsequent statements indicated that he was the person who attempted to kill the wife. *Id*. at 808. Our Supreme Court summarized the testimony:

> [Victim's husband] further testified that some time later he answered the telephone, which was ringing, **whereupon he recognized the caller's voice to be that of [the defendant]**. He immediately advised Detective George Hedgeman of the caller's identity and handed him the telephone receiver. Hedgeman related that when he took the receiver and placed it to his ear, the caller asked "Is [Victim] dead?" According to his testimony, Hedgeman replied she was in the hospital and requested the caller to identify himself, whereupon the caller stated, "She better be dead from what I put on her," and hung up.

*Id*. (emphasis added). The Court upheld the admissibility of the telephone call evidence, both the identification of the caller by the victim's husband and the contents of the communication as reported by the detective. *Id*.

Also at issue in **Carpenter**, **supra**, was another phone call allegedly made by the defendant. A woman testified at trial that the defendant called her and told her he killed the victim. *Id*. She testified that she knew Carpenter, had conversed with him approximately five or six times in person, and three to four times on the telephone. She stated that she was able to recognize his voice. The Court concluded that this evidence "established the foundation requisite to permit testimony as to the substance of the conversation." *Id*. at 809. Furthermore, the defendant's attacks on the credibility of the identification testimony "did not bear on the question of admissibility, but rather were properly a matter for the jury to consider in determining the weight [of the evidence]." *Id*.

Presently, Complainant testified that she heard Appellant's voice in the laundromat when he repeated as many as twenty times, "Don't f-ing move!" She continued that after she testified at the preliminary hearing, she received a telephone call from a man with the same voice as her assailant. The caller identified himself as "Rashann" and said he was sorry for what he did, and told her that "Wink" put him up to it in retaliation for her son testifying regarding a murder on Stanley Street.

The trial court did not abuse its discretion in admitting this evidence. Complainant was familiar with Appellant's voice and recognized it as that of her assailant. In addition, the caller identified himself by his first name, Rashann, and the context of the conversation provided details indicating that he was familiar with the circumstances of the crime. He offered a motive for trying to kill her. Appellant's contention that the Complainant's testimony was not credible is not considered for the purpose of admissibility; it goes to the weight of the evidence. Therefore, Appellant's challenge to the admissibility of testimonial evidence of the phone call lacks merit.

Next, Appellant alleges that the trial court abused its discretion in permitting the Complainant and Detective Brian Peters to testify about an unsolved murder that did not involve him. Appellant argued prior to trial that the Stanley Street murder of Anwar Ashmore could not be tied to him. The Commonwealth disagreed. It explained to the trial court prior to trial that the Complainant's son, Raheem, was an eyewitness to the shooting of Anwar Ashmore, (street name "Ikbud") on April 22, 2010, the so-called Stanley Street murder. Several months later, Raheem provided a statement to homicide detectives in which he identified Ronald Thomas, (street name "Holloman") as the shooter. On November 19, 2010, Appellant put a gun to the Complainant's head. After the preliminary hearing, the Complainant's son Khalil received a phone call on a cell phone. Khalil spoke first and then handed the phone to the Complainant. She recognized the voice as

belonging to her assailant. The caller identified himself as "Rashann." He apologized for trying to kill her, and in response to her inquiry as to why someone would want to kill her, Appellant told her that Wink instigated it in retaliation for Kaheem's fingering of Holloman in the Ashmore murder on Stanley Street. Detective Peters further explained that Appellant, Wink, Holloman, the Complainant's son Kaheem, and several others were friends known to frequent the 2600 block of Stanley Street.

Appellant concedes that evidence of other acts may be admissible to show motive or history of the case, but only where it is more probative than prejudicial. Pa.R.E. 404(b)(2) and (3) (rescinded and replaced effective March 18, 2013). However, he alleges that the evidence of motive here was not sufficiently connected to him to warrant admission of the facts surrounding the Stanley Street killing of Ashmore. He maintains that the only link was the erroneously admitted telephone call. Hence, he contends that admission of this evidence was reversible error as the prejudicial impact outweighed any probative value.

We have already concluded that there was no error in the admission of the telephone call. We agree with the Commonwealth that the testimony about Ashmore's murder was relevant to understanding Appellant's motive in attempting to kill Complainant. *See Commonwealth v. Green*, 76 A.3d 575 (Pa.Super. 2013). Bad acts evidence is admissible to show motive. Pa.R.E. 404(b)(2). Furthermore, it is admissible as part of the *res gestae* of

- 14 -

the case.  *Id*.  Evidence that Complainant's son, Kaheem, provided information to police about Holloman's murder of Ashmore supplied the context necessary to understand Appellant's motive in attempting to murder the Complainant as expressed in the telephone call.  We do not find the evidence to be unduly prejudicial as it did not implicate Appellant in the Stanley Street murder.  Furthermore, it did not suggest that he had a propensity to murder people and act in conformity therewith on this occasion, which would be a basis to preclude such evidence.  Hence, no relief is due.

Finally, Appellant contends that the trial court abused its discretion when it failed to rule on all motions *in limine* prior to trial.  He points to Pa.R.Crim.P. 580, ("Unless otherwise provided in these rules, all pretrial motions shall be determined before trial. Trial shall be postponed by the court for the determination of pretrial motions, if necessary."), in support of that position.  Specifically, Appellant complains that the trial court's failure to timely and definitively rule on the admissibility of the telephone call and evidence of the Stanley Street killing was prejudicial because he could not defuse the impact of the phone call evidence in his opening statement, and was forced to object repeatedly in front of the jury.

The Commonwealth points out that the trial court preliminarily ruled that the telephone call and the associated other acts evidence were admissible, but deferred its final ruling until after lunch.  Appellant did not

object. After lunch, the trial court advised the parties that it was inclined to rule in accord with its preliminary ruling, but wanted additional time. No one was to mention the phone call during opening statements. Again, Appellant did not object.

Having failed to object to the trial court's failure to issue a definitive ruling prior to trial, Appellant has waived this issue on appeal. Pa.R.A.P. 302(b). However, even if we were not to find waiver, Appellant's claim fails. This Court noted in **Commonwealth v. Metzer**, 634 A.2d 228, 232 n.3 (Pa.Super. 1993), that "[a]lthough a motion in limine is generally made before trial, the trial court may elect to rule upon the application at a later time." In this case, the trial court ruled preliminarily that the evidence was admissible but wanted to "give the attorneys an opportunity to provide case law." N.T., 1/11/12, at 16. The court definitively ruled before the Complainant testified regarding the contents of the telephone call and the situation with Holloman.

Furthermore, Appellant fails to establish prejudice. Since we have previously concluded that the trial court did not abuse its discretion in admitting this evidence, this is not a situation where the jury was exposed to prejudicial inadmissible evidence. Moreover, as the Commonwealth correctly points out, Appellant neglects to specify herein what his counsel would have said in his opening statement to reduce the impact of this evidence. Appellant merely avers generally that his counsel was deprived of the

opportunity to use the opening statement to tell the jury about "the circumstances surrounding the phone call." Appellant's brief at 42.

The purpose of an opening statement is "to apprise the jury of how the case will develop, its background and what will be attempted to be proved." ***Commonwealth v. Parker***, 882 A.2d 488, 493 (Pa.Super. 2005). Since Appellant's strategy at trial was to discredit Complainant's identification of him as the perpetrator/telephone caller, we cannot conceive of any reason why his counsel would undercut that strategy by discussing the circumstances surrounding the phone call that his client purportedly did not make.

Nor does Appellant indicate why his counsel was forced to repeatedly object to this evidence and how he was prejudiced in that regard. The adverse ruling on the motion *in limine* was sufficient to preserve his objection to the admissibility of this evidence for appellate review. The record reveals that counsel's objections pertained to the form of the questions and the Complainant's lack of personal knowledge, and were unrelated to the motion *in limine*. For all of the aforementioned reasons, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2014